IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

MIDDLE DISTRICT — MAY TERM 1845.

## Susquehanna Canal Company *against* Wright.

The State is never presumed to have parted with one of its franchises, in the absence of conclusive proof of such an intention; hence, a license accorded by a public law to a riparian owner to erect a dam in the Susquehanna river, and conduct the water upon his land for his own private purposes, is subject to any future provision which the State may make with regard to the navigation of the river; and if the State authorize a company to construct a canal which impairs the right of such riparian owner, he is not entitled to recover damages from the company.

ERROR to the Common Pleas of *Adams* county.

William Wright against the Susquehanna Canal Company. This proceeding originated upon the petition of William Wright, setting forth: "That he is the owner of a tract of land in Hellam township, York county, bounded north-west by land of the heirs of James Wright, north and east by the Susquehanna river, south by Limekiln Alley in the borough of Wrightsville, west by land of James Wright's heirs; that by an Act of Assembly passed 11th February 1803, the said William Wright was authorized to lead off and use part of the waters of the Susquehanna upon his said land; and that by an Act of Assembly passed the 21st March 1836, it was provided that any damage done to his rights, privileges or property by the location or construction of the dam or

[Susquehanna Canal Company *v.* Wright.]

canal of the Susquehanna Canal Company, should be ascertained and determined as directed by the Act incorporating said Susquehanna Canal Company in other cases of damages. And your petitioner represents, that by the location and construction of the dam of said company, his 'rights, privileges and property' are seriously 'injured and interrupted;' and that he has not been able to agree with the company on the compensation to be made to him, nor on six men to assess the same. He therefore prays the court to award a *venire* directed to the sheriff of York county, commanding him to summon a jury of disinterested men, to ascertain and report to the court what damages, if any, have been sustained by him, by reason of the premises."

The Act of Assembly which gave the right to the plaintiff which is referred to in his petition, provides: " That William Wright, proprietor of the land adjoining Chiques falls, on the west side of the river Susquehanna, in York county, and his heirs and assigns, shall have liberty, and are hereby authorized and empowered to lead off on the said river a part of the water out of the said river, for the supply of such water-works as he the said William Wright, his heirs and assigns, may see fit to erect thereon, and to build such dam in the said river adjoining his said land as shall be necessary for effecting the purpose intended: Provided always, That the said William Wright, his heirs or assigns, in building such dam and leading the water out of said river, do not infringe on or injure the rights and privileges of any individual, nor in any wise impede or obstruct the navigation in the same: And provided also, That nothing herein contained shall be construed to impair any contract existing between this State and the Chesapeake and Delaware Canal Company, incorporated or to be incorporated by virtue of an act entitled 'An Act to incorporate a company for the purpose of cutting and making a canal between the river Delaware and the Chesapeake bay, and to authorize the clearing of obstructions in the river Susquehanna, down to the Maryland line, and for other purposes therein mentioned."

By an Act passed the 26th March 1836, incorporating the Susquehanna Canal Company, provision is made for a mode of ascertaining the damage which any individual may sustain by reason of the construction of the said canal; and it contains also this clause: " That any rights, privileges or property which William Wright may have conferred on him by virtue of an Act of Assembly passed the 11th of February 1803, entitled 'An Act authorizing William Wright to lead off and use part of the waters of the Susquehanna on his own land in York county,' if injured or interrupted by the location or construction of the dam or canal hereby authorized, any damage which shall be sustained by him shall be ascertained and determined as directed by the eighth section of the Act to which this is a supplement, in other cases of damage."

It was admitted that an injury was done to this supposed right

of the plaintiff (for the jury so found it). The question presented to the court below was, whether it was such a right as entitled him to recover damages from the defendant. The court instructed the jury that it was such a right vested in the plaintiff as entitled him to recover : and this was the subject of the error assigned.

*Stevens* and *Mayer* for plaintiff in error, argued that the Commonwealth did not by the Act of 1803 part with the right to improve the navigation of the Susquehanna river, but on the contrary expressly reserved it : and by the Act incorporating the Susquehanna Canal Company it was authorised to construct a canal along the stream, by which a consequential injury was done to the plaintiff, but for which he was not entitled to recover damages : the company was but exercising the right which the State had reserved : 6 *Watts & Serg.* 101 ; 9 *Conn. Rep.* 456 ; 8 *Cow. Rep.* 146.

*Cooper* and *Hambley*, contra, contended that, by the plain provisions of the Act by which the defendants were incorporated, it was a condition that the plaintiff should be compensated for any injury that he should sustain by reason of the construction of the canal. The grant to the plaintiff by the Act of 1803 was a contract with him, which the State had no power to violate. 3 *Story Const.* sec. 1385 ; 5 *Wend.* 424.

The opinion of the Court was delivered by

GIBSON, C. J.—The principle which rules the first point in the cause has been determined since the former argument of it, in the *Monongahela Navigation Company* v. *Coons*, in which it was held that the State is never presumed to have parted with one of its franchises in the absence of conclusive proof of such an intention. It was held that the license accorded to riparian owners, by the public Act of 1803, to erect mill-dams in navigable streams, is defeasible and subordinate to the public will. The license accorded by this private act is, for reasons equally good, also defeasible and subordinate. Before the canal company was incorporated, it was enacted that Mr. Wright and his heirs should be at liberty " to lead off on the said land (the land of Mr. Wright) a part of the water out of the said river (Susquehanna), for the supply of such water-works as he the said William Wright, his heirs and assigns, may see fit to erect thereon ; and to build such dam in the said river, adjoining the said land, as shall be necessary for effecting the purpose intended : Provided, that the said William Wright, his heirs or assigns, in building such dam and leading the water out of said river, do not infringe on or injure the rights and privileges of any individual, or in any wise impede or obstruct *the navigation in the same.*" This proviso is an express saving of the public navigation, and consequently of the ancillary right to im-

[Susquehanna Canal Company *v.* Wright.]

prove it. It is palpable therefore that the legislature did not intend to part with a particle of control over this great and leading highway. A surrender of any part of it would have been an act of political suicide; and a privy to it would certainly not be allowed to derive an advantage from it to the prejudice of the public, if the grant were at all open to interpretation. What remains, therefore, is to inquire whether the legislature intended to pay Mr Wright gratuitously for his dam and canal, and without regard to the solidity of his claim.

To give the Act that effect, would impute to the legislature an intent to squander the company's money, which would be still more reprehensible than an intent to squander the money of the State, over which it has at least a constitutional control, and one which is not to be imputed in the absence of explicit terms. The sixth section of the supplement to the Act of incorporation, from which such an intent is thought to be inferable, provides: " That any *rights, privileges* or *property* which William Wright may have (had) conferred on him by virtue of an Act of Assembly passed the 11th day of February 1803, entitled 'An Act authorizing William Wright to lead off and use part of the waters of the Susquehanna on his own land in York county,' if injured or interrupted by the location or construction of the dam or canal hereby authorized, any damage which shall be sustained by him shall be ascertained and determined as directed by the eighth section of the Act to which this is a supplement, *in other cases of damage.*" The section thus referred to provided a remedy for damages done immediately to the soil by taking it for public use, which was decisively a constitutional wrong; and when the same remedy was extended to the consequential damage done to the property of Mr Wright, there was no intention to put him on higher ground, and compensate him for damage which should turn out to be no wrong at all. The constitutional question of the duty of the State to make compensation for consequential damages to property not absolutely taken by its authority, had not been determined; and as it was uncertain whether Mr Wright had not a valid claim, an immediate tribunal was provided to try the right and compensate a loss, if any such there were, which neither the State nor a grantee of its power could compel him to bear. The avowed design was to compensate him for "rights, privileges or property" injured or interrupted, and these could not have existed without the guarantee of the fundamental law. He had been authorised to take the water, but with an express proviso that the navigation should not be obstructed; and as the grant was on that condition, the legislature could revoke it without incurring even a moral obligation to see him reimbursed the expense incurred in the prosecution of his works. The license was granted at his solicitation, for his private benefit, and without the consideration of public benefit to raise an implied duty of even imperfect obligation on

the part of the State.   He was bound to know that the State had power to revoke its license whenever the paramount interest of the public should require it; and in this respect, a grant by a public agent of limited powers, and bound not to throw away the interests confided to it, is different from a grant by an individual who is master of the subject.   To revoke the latter after an expenditure in the prosecution of it, would be a fraud; but he who accepts a license from the legislature, knowing that he is dealing with an agent bound by duty not to impair a public right, does so at his risk; and a voluntary expenditure on the foot of it gives him no claim to compensation.   It is to be presumed, therefore, that, in the absence of an explicit declaration, it was not intended to impose on the company, standing in the place of the State, a burden which the State itself was not bound to bear.

Judgment reversed.