## Woodward and Vincent *versus* Webb.

1. In an action of tort, the defendants may defend as being agents of a corporation and doing nothing outside of the duties of their employment.

2. A servant can justify doing any act which his master had a right to do.

3. A corporation were authorized to improve a stream, in an injury done by their servants in what the corporation had authority to do, there was no privity by law or contract between the servants and the injured party.

4. Consequential damages are not recoverable from an improvement corporation, except when expressly given and on the terms on which they are allowed.

5. An improvement company was required to file a bond, "in a sum sufficient to indemnify all persons holding property on said stream for any loss they may sustain by reason of said improvement." Persons injured are to proceed by a common-law procedure to recover damages, and in case of non-payment recourse is to be had to the bond.

6. The Act of April 24th 1864, incorporating the Bennett's Branch Improvement Company, gives the company unlimited authority in the stream on condition of paying the damages outside of it.

7. There is no default in the company in not paying damages before they are demanded, nor then if they are unreasonable.

8. The plaintiffs assisted the company in building the dam complained of, which was not on his land. He was not estopped from claiming damages.

March 31st 1870.    Before THOMPSON, C. J., AGNEW, SHARS-WOOD and WILLIAMS, JJ.    READ, J., at Nisi Prius.

Error to the Court of Common Pleas of *Elk county:* Of January Term 1870, No. 401.

This was an action on the case by Charles Webb against Hiram Woodward and Edward Vincent, brought April 7th 1869, for injury to the plaintiff's mills by flooding water back on them.

The plaintiff was the owner of two mills, one a grist-mill and the other a saw-mill, on Bennett's Branch of the Sinnemahoning creek, and had owned and been in possession of them for thirty years. The two mills are within the stream and run upon the same level. Bennett's Branch had been declared a public highway by Act of March 23d 1818.

The Bennett's Branch Improvement Company was incorporated by the Act of April 24th 1864, Pamph. L. 499. The following are sections of the act:—

Sect. 2. The said corporation shall have power and are hereby authorized to clear out, improve and use. all and every part of Bennett's Branch of the Sinnemahoning creek, in the counties of Clearfield and Elk, from the mouth of the large run, known as Bundy's run, above the saw-mill of Stephen Bundy, down the same to the mill, known as Lindermuth's mill, below Caledonia, and shall have the right to use all dams now erected by any members of said corporation upon said stream, and to erect new dams, in such manner and at such points as they may think proper, and

shall and may use all and each of said dams and the waters of said stream in the floating of saw-logs down the same, and generally shall and may have the right to straighten, deepen, crib and widen the channel of the stream aforesaid in such manner as they see fit for the purposes aforesaid: Provided, That no injury shall be thereby done to private property outside of the limits of the stream aforesaid.

Sect. 6. That said company shall be required to file a bond in the Court of Common Pleas of Clearfield county, to be approved by said court, in a sum sufficient to indemnify all persons holding property on said stream for any loss they may sustain by reason of said improvement.

In pursuance of the authority of this act the corporation erected what is called the "Slabtown dam," about a mile and a half below the plaintiff's mills, and within the limits which were designated in the act for the improvement of Bennett's Branch. The dam was built, and during the season of floating logs was kept up and managed for raising "splashes" for the purpose of driving logs down the stream. The dam had been built under the charge of Woodward, one of the defendants. Vincent, the other defendant, attended to the splashing under Woodward who had the contract for doing it—both were in the employ of the corporation, and acted under their authority and direction. When the "brackets" were put on the dam for the purpose of "splashing," the plaintiff's dam and mill-wheels were flooded. There was evidence that the plaintiff furnished lumber for the construction of the dam, boarded the workmen whilst it was being built, was frequently at the dam, and knew the purposes of its erection.

There was much evidence as to the amount of injury sustained by the plaintiff, and as to the mode in which the splashes were made.

The defendants submitted these points:—

1. If the jury believe that during the erection of this dam Charles Webb had full knowledge thereof, was frequently there during its building, furnished lumber or materials for its construction, boarded the hands employed in its erection, and all this with knowledge of the purpose for which the same was being erected, from these facts they may find a license from the plaintiff to use the dam in the execution of that purpose, and if a license be so found, the plaintiff cannot recover in this action.

2. If the jury find the facts as stated in the 1st point, they constitute an equitable estoppel and bar this action.

3d. The 6th section of the Act of 20th April 1864, entitled "An act to incorporate the Bennett's Branch Improvement Company," is not a condition precedent to its organization, or to the exercise of the rights and privileges therein granted to said company.

[Woodward *v.* Webb.]

4. The rights of the plaintiff in his mill-dams are subservient to the superior right of public navigation. The right being a public one, is entirely within legislative control, and the Act of Assembly of 20th April 1864 gives an unrestricted right to erect and use their dams as they may deem proper for the purpose of floating logs, saving only private rights without the limits of the stream.

The court (Johnson, P. J.) charged:— * * *

" On behalf of the defendants it is contended that they are but the agents or employees of others, and therefore should not be held responsible.   While that rule might be applicable in matters of contract and in a different form of action, it is not available to protect a party against liability for a tort or in actions *ex delicto* such as this.   Every man must answer for his own wrong, and cannot be excused by the command or employment of another.

" But it is alleged in their behalf that the parties under and with whom they were acting had authority to erect the dam and flow the water back on owners above, without limit or accountability for consequential damages.

" This position can be maintained only by falling back on the right of eminent domain, remaining in the Commonwealth in all navigable streams, and claiming that as to this stream it was granted to the ' Bennett's Branch Improvement Company' by the Act of the 20th April 1864, of which the parties behind the defendants, and for whose benefit mainly the dam was used, were members.

" If this were a public corporation created by the legislature for the construction of some public improvement, in which the citizens of the Commonwealth had an interest, and by which they were to be benefited, there would be much force in the position.

" But we cannot so regard it.   Both in purpose and practice it it a private institution, intended and used for the private business and profit of the few immediately concerned in floating their logs from their timber lands above to the mills below the plaintiff's premises.

" [While the act grants them (the corporators) the privilege of cleaning out the channel and improving the log navigation of the stream, it invests them with no authority to invade the rights of riparian owners or previous occupants of water privileges thereon. It gives no express power to take and convert private property to public use, nor makes any provision for the assessment of damages for such appropriation, without which the grant would be unconstitutional.   Their grant is subordinate to previously existing rights at least until adverse rights were extinguished by purchase or damages paid or secured according to law.] This has not been done.

" No protection is therefore afforded to the defendants, or those

[Woodward *v.* Webb.]

whose will and word put them in motion by the act referred to. It is only when the paramount interests of the public require it, that vested rights of individuals must surrender, even upon payment of an ample compensation.

" Here no compensation has been made, tendered or secured, and no public interests demand the sacrifice. The contest is between private parties, each seeking their own private emolument at the expense or inconvenience of the other.

"[We therefore say to you, that neither the defendants nor those under or with whom they were acting, acquired any right by virtue of the act referred to, to disregard the plaintiff's rights and flood his mill-wheels to his detriment.]

" This disposes of the main question in the case, and answers the defendants' 3d and 4th points in the negative." * *

The court answered the 1st and 2d points in the negative and said:—

" We think, to submit the question of estoppel to the jury under the evidence before us, even if it were a question for the jury to decide, would be manifest error, on the ground that there is no evidence to support it.

" As the question upon which the liability of the defendants to respond to the plaintiff's cause of action depends, are questions of law arising upon admitted or undisputed facts, and have thus been decided in favor of the plaintiff, it remains for you to determine whether the plaintiff has sustained any damage by the acts of defendants in flooding his wheels, and if so, how much? and for that to render your verdict.

" If you find for the plaintiff, it is not a case for assessing speculative or exemplary damages.

" The defendants are supposed to have been acting under a claim of right, and if mistaken, are only liable for the damages actually inflicted by them, or that have resulted from their unlawful act.

" This, of course, would include something for the invasion of the plaintiff's rights, though that may be merely nominal if done under a mistake; also, whatever loss he has sustained by the stoppage of his mills; also, something for the derangement of his business, and the inconvenience of being arbitrarily disturbed in his ordinary and legitimate avocations.

" While a mere proportion of what would be the annual rental value of the premises would be an inadequate compensation, so any calculation formed upon the daily capacity of the mills would be exorbitant. * * *

" Nor is a man who is wrongfully deprived of the use of his property, perhaps at inconvenient periods, to be compensated by payment of only what would be an equal proportion of a rental

15 P. F. SMITH—17

[Woodward *v.* Webb.]

value, for the time thus occupied.   A man cannot be thus forced
to rent his property on such terms.

[ "Adopt some medium standard that shall be just and equita-
ble between man and man, without vindictiveness on the one hand
or favoritism on the other, such as your own conscience will
approve, and simple justice, under the circumstances, demands.]"

The verdict was for the plaintiff for $2000.

The defendants took a writ of error.

They assigned for error, the answers to their 1st, 2d and 4th
points; the parts of the charge enclosed in brackets and the
instruction of the court that the plaintiff was entitled to recover.

*J. G. Hall, S. G. Thompson* and *J. W. Mayward,* for plain-
tiffs in error.—The plaintiff could have no right against the Com-
monwealth and consequently not against the company who is the
agent of the Commonwealth : McClenachan *v.* Curwin, 3 Yeates
362.   The damages here are consequential, and there is no *right*
to compensation : Monongahela Nav. Co. *v.* Coons, 6 W. & S. 115 ;
s. c. 6 Barr 382 ; N. Y. and Erie Railroad *v.* Young, 9 Casey
180 ; Susquehanna Canal Co. *v.* Wright, 9 W. & S. 9; McKin-
ney *v.* Monongahela Nav. Co., 2 *Harris* 65; Shrunk *v.* Schuyl-
kill Nav. Co., 14 S. & R. 71 ; The Philadelphia and Trenton Rail-
road, 6 Whart. 45; Rundle *v.* The Delaware and Raritan Canal Co.,
14 How. 89 ; Commonwealth *v.* Fisher, 1 Penna. R. 462.   As to
estoppel they cited Commonwealth *v.* Moltz, 10 Barr 531 ; Arnold
*v.* Cornman, 14 Wright 361 ; Railroad Co. *v.* McLanahan, 9 P.
F. Smith 31 ; and as to the measure of damages, Little Schuyl-
kill Nav. and Railroad Co. *v.* Richards, 7 P. F. Smith 144.

*H. Souther,* for defendant in error.—A corporation cannot exer-
cise the power of eminent domain without a strict compliance with
all provisions intended to secure compensation : Bell *v.* Ohio and
Penna. Railroad, 1 Grant 105.   The "splash" dam was illegal
and therefore its consequences : Dubois *v.* Glaub, 2 P. F. Smith
238.   A corporation is exempt from consequential damages only
when they are not part of the compensation required : Pottstown
Gas Co. *v.* Murphy, 3 Wright 257 ; Chestnut Hill and Spring H.
Turnpike Co. *v.* Rutter, 4 S. & R. 6.

The opinion of the court was delivered, May 5th 1870, by

THOMPSON, C. J.—The plaintiff below claimed that what is
known as the " Slabtown Dam" injured his grist and saw mills,
situate on the Bennett's Branch of the Sinnemahoning, by setting
the water back on his mill-wheels, and thus retarding their motion.
This occurs when splash-floods are resorted to to carry logs and
timber down the stream, and at no other times.

The dam is a portion of the works of the " Bennett's Branch

[Woodward *v.* Webb.]

Improvement Company." The testimony is abundant and uncontradicted, that the company has had the control of the dam as part of their works since 1864, the year in which it was incorporated, and that the plaintiff knew all about it. It is idle to entertain the thought for a moment, that the plaintiff did not know that the dam was kept up and managed in raising splashes for floating logs by the company. It was within a mile of his mills, and he himself testified that Woodward had the charge of the splashes from 1864 to 1867. Notwithstanding this knowledge he brought suit to recover for the injuries alleged to have been done him, in consequence of the dam of the company, against men acting as agents or servants of the company, and not against the company itself, their superior and principal.

The testimony and the charge of the learned judge, show very clearly, that the defendants below defended on the ground of being the servants of the company. This they could unquestionably do if it was a public corporation, and they mere servants, and if they did nothing outside of the duties of their employment. We need not cite very numerous authorities for this. But see 2 Greenleaf's Ev. 54; 1 Bl. Com. 429; 12 Mod. 489; 17 Mass. R. 508; Paley on Agency, by Daniels 298; 11 Denio 118; 2 Comst. 129; 7 John. R. 471; Telegraph Co. *v.* Dryburg, 11 Casey 298; Painter *v.* The City of Pittsburg, 10 Wright 213; Joyce *v.* Sims, 2 Dal. 223; Same Case, 1 Yeates 409; Passmore *v.* Mott, 2 Binn. 201. These authorities, and many more might be added, present the rule on this subject much as it was presented by Sir William Blackstone, who says: "If a servant, by his negligence, does any damage to a stranger, the master shall answer for his neglect, but the damage must be done while he is actually employed in his master's service."

If this be so, where there is a wrong done, he can certainly justify doing anything as a servant which his master had a right to do. He cannot be disconnected from his employer and held answerable for want of original authority in himself if his master had it, and he acted by and within the scope of his master's authority.

The Bennett's Branch Improvement Company was incorporated by Act of Assembly of 20th April 1864 and the several supplements thereto, and was authorized to clear out, improve and use all and every part of Bennett's Branch of the Sinnemahoning between Stephen Bundy's and its mouth, with the right to use dams then erected by members of the corporation, and to erect new ones in such manner and at such points as they may deem proper, and shall and may use all and each of said dams, and the waters of said stream, for floating logs down the same, and generally shall and may have the right to straighten, deepen, crib and widen the channel of the stream aforesaid, in such manner as they shall see fit for the purposes aforesaid. Provided, that no injury shall

[Woodward *v.* Webb.]

thereby be done to private property outside the limits of the stream aforesaid.

In the opinion just filed in Winslow & Crowell's Appeal (antea, p. 242), and the several appeals therein mentioned, we held that the incorporation of the Improvement Company, was in its use a public corporation and highway, subject to be used by all persons, on the condition of paying tolls according to the rates therein mentioned and established.

The defendants claimed in their defence, that they were the servants of the corporation, and exempt from liability for the consequences of the company's acts. It was not shown, or pretended, that they acted wilfully or maliciously, or outside of what the company was authorized to do. The company accepted the act incorporating it on the terms on which it was granted: viz., that it would do no injury to private property outside the stream, the correlative of which would be, that if it did, it would compensate the injury. The idea of holding its employees to a like accountability, would be as novel as it would be unjust, and this the citation of the authorities referred to prove. There was, neither by law nor contract, any privity between the plaintiff and them. If damages could be rendered against such parties, such improvements could never be made, as no one would be willing to take upon himself to assume the acts of the corporation over which he had no control. Nor would he have any recourse to the company to reimburse himself, if damages were recovered against him. The defendants justified as servants of the company. But the right to do so was entirely ignored by the learned judge. This appears throughout the charge, but culminates in the portion assigned for error by the counsel for the plaintiff in error, as follows:—

"We therefore say to you, that neither .the defendants nor those under or with whom they were acting, acquired any right, by virtue of the act referred to, to disregard the plaintiff, and flood his mill-wheels to his detriment."

If any thought lingered in the learned judge's mind that damages such as these, being entirely consequential, are to be prepaid before the dam could be erected and used, all the authorities in Pennsylvania on the point are against him, a majority of which have been referred to in the paper-book of the plaintiff in error, and will not be repeated. The point is too clear to need it. Consequential damages are never recoverable from a corporation of this nature, excepting when expressly given, and on the terms on which they are allowed. Here, by the act of incorporation, it is not to be doubted that consequential damages may be recovered in the common-law courts and forms of action. Of course, those who suffer must move, for *non constat* the corporation is apprised of any injury having been done. A common-law procedure in form is the remedy in this case, and in case of non-payment of

[Woodward v. Webb.]

damages found, the bond of the company approved and filed in the county of Clearfield, stands as an indemnity. The suit is first to be against the company. That is, to ascertain the amount of damages to be paid, which if not paid, recourse may be had to the bond. I would suppose that no one would think of suing the bond in the first place.

We think the learned judge was clearly wrong in the instruction referred to; it in fact disposed of every question in the case but the amount of the damages. The company had most unlimited authority in the stream itself, on the condition of paying for damage done outside of it.

It was not in default in not having paid them, until demanded; nor then, if the demand was unreasonable. This being the case, the charge was error, if the company alone had been sued, but it was most unquestionable error, to allow a recovery against the defendants, unless for a wilful trespass, which was not pretended. The action was case, and not trespass for acting without authority in raising the water on the plaintiff, before paying for the right. This was not required. There might have been plausibility in this, although it would want soundness.

It was strenuously argued, that this branch of the Sinnemahoning having been declared a public highway before the plaintiff erected his mills, his right, under the Act of 1803, so to erect, was but a license as between the Commonwealth and him, which, if revoked or destroyed by authority of the State, no damage could be demanded. This is true, on the authority of Young v. The Railroad Co., 9 Casey 180; Canal Co. v. Wright, 9 W. & S. 9, and other cases. But if the Commonwealth require damage done to such property to be paid for by a company, it must be done. That is what it seems to me was done here. The company accepted its charter on the condition of paying for any injury it might do outside the bed or body of the Sinnemahoning creek. The point insisted on does not therefore arise.

There was no error on the part of the learned judge in denying the estoppel as complained of. It mattered not how much the plaintiff might have aided the company in building the dam. It was not on his property, and even if it had been, he could do nothing except by contract, to weaken his right to be compensated by the company for injuries such as the law required to be compensated. He could give no notice which would avail to affect the company in building the dam. This was authorized by the state. It is not the kind of case to which the doctrine of equitable estoppel applies.

The charge on the measure of damages was indefinite, but I am not willing to say there was absolute error in it. I incline to think that the damage to be recovered in an action against the company, is not sustainable on the ground of being a nuisance.

[Woodward *v.* Webb.]

The company being authorized, in the course of the construction of their works, to do as was done here, raise the water, on paying the damage done, it could not be chargeable as for a nuisance any more than could the state from which it derives its power. The claim, whenever asserted, we think should cover the damage to the property as mills, past and future. In fixing this, it should be done, in our opinion, on the estimate of the value of the property, and then the deterioration it has suffered. This would be the damage done. What portion that would be of the unit of value would be a safe standard, we think.

With this in view the business and demands of the neighborhood would necessarily have something to do. These crude and ill-digested acts of the legislature, must be moulded to suit what was designed by the legislature, or either the public or the company will in the end suffer.

These views .are suggested rather than decided, for consideration of court or counsel in any other trial of this or other cases of the kind on the Sinnemahoning. As we think the doctrine of *respondeat superior* ought to have protected the defendant below, we will reverse the case, without awarding a *venire de novo* at present, leaving that to be applied for by counsel on showing cause.

Judgment reversed.