## OIL WELL SUPPLY CO. v. EXCHANGE N. BANK.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued October 31, 1889—Decided January 6, 1890.
[To be reported.]

1. When the payee in a promissory note indorses it and has it discounted by a bank, the bank thereby becomes its owner; the payee having no further concern with it except his contingent liability as indorser, is uninjured by a neglect of the holder's agent to present it to the maker at maturity, and if, with knowledge thereof, he afterwards voluntarily pays it, such payment gives the payee no right of action against such agent for his negligence: Harvey v. Girard N. Bank, 119 Pa. 212.

Statement of Facts.

(*a*) A bank, to which a note was sent for collection, failed to present it to the makers until a month after maturity, when they were insolvent, and then returned it to the holder with a letter stating that on presentation the makers said an arrangement with the indorsers had been made for its renewal, and requesting the holder to endeavor to arrange the matter without loss to itself, but directing that if this could not be done the note be returned for credit upon the holder's account.

(*b*) The holder sent the note to the second indorser, who was merely the agent of the payee and first indorser, together with a memorandum saying: "We are advised that maker has made arrangements with payee for renewal." Thereupon, without inquiry of his principal as to the correctness of this advice, the payee's agent paid and lifted the note for the payee, who, after reimbursing the agent, brought an action for deceit against the collecting bank.

2. The statement made in the letter of the collecting bank, even if untrue, did not sustain the action: the letter was not a communication between that bank and the plaintiff, and if the payee's agent relied upon anything, it was not the letter but the memorandum made by the holder; moreover, that memorandum did not assert the fact of any arrangement but merely an advice thereof, which was true, and it was only a suggestion of a possible arrangement respecting which the agent was bound to inquire of the principal.

Before Paxson, C. J., Sterrett, Green, Clark, Williams, McCollum and Mitchell, JJ.

No. 154 October Term 1889, Sup. Ct.; court below, No. 82 April Term 1888, C. P. No. 2.

On January 19, 1888, the Oil Well Supply Company, Limited, brought trespass against the Exchange National Bank of Pittsburgh, to recover damages alleged to have been suffered by the plaintiff in consequence of a disregard by the defendant bank of its duty in the matter of the collection of a certain note, and of certain alleged false and deceptive statements of the defendant.

At the trial on February 14, 1889, the following facts were shown: On January 24, 1887, Davis & Moore gave to the plaintiff the following note:

$500.00.                    Pittsburgh, Pa., January 24th, 1887.

Ninety days after date we promise to pay to the order of Oil Well Supply Co., Limited, Five hundred dollars, at Central Bank, without defalcation, for value received.

Davis & Moore.

A few days later the plaintiff, after indorsing the note, sent it

to the Eaton, Cole & Burnham Co., its correspondent and agent in New York City, which also indorsed it and put it in the hands of a note broker in New York, together with other business paper, "for sale in the usual course of business." The broker afterward rendered an account of the sale of a lot of paper of which the Davis & Moore note formed a part, and paid the proceeds thereof to the Eaton, Cole & Burnham Co., who deposited the proceeds of that note to the credit of the plaintiff in a bank at New York. With the indorsements of these two companies upon it, the Davis & Moore note was discounted in the Broadway National Bank of New York, but for whom it did not appear in the evidence. As holder of the note, the Broadway N. Bank sent it to the defendant bank, at Pittsburgh, for collection. Upon its receipt by the defendant, a memorandum was made upon the note, by mistake of one of the defendant's clerks, indicating that it would be due May 24–27, 1887, instead of April 24–27, the real date of maturity. In consequence of this misleading memorandum, the note was not presented for payment until May 27th. It was not paid by the makers on presentment. There was testimony tending to show that had it been presented at maturity they would have met it, but on May 27th they were in financial straits which resulted in their making a voluntary assignment for the benefit of creditors in the following July.

Upon the dishonor of the note, Andrew Long, the cashier of the defendant bank, on May 27, 1887, wrote to the cashier of the Broadway National Bank as follows:

"Dear Sir: I return herein note of Davis & Moore, due April 24–27, $500. Owing to an error of our clerk it was not presented for payment at maturity. It was presented at the bank where payable to-day, but it was not honored. The makers were then notified, and they say arrangement with indorsers has been made for its renewal. If you can arrange it without loss to yourselves please do so; if not, send it back to us and we will credit your account for same."

Robert Moore, of the firm of Davis & Moore, to whom the notification referred in the cashier's letter was given, testified that he did not inform the bank clerk, who saw him, that arrangements had been made between himself and the plaintiff to renew the paper, though he did state to the clerk that there

Opinion of Court below.

was an arrangement by which the plaintiff was to discount some paper of customers of Davis & Moore, and advance to the witness thereon the money to pay this note.

Having received the letter from the defendant's cashier of May 27th, with the note therein inclosed, the Broadway N. Bank sent the note to the Eaton, Cole & Burnham Co., with a request for payment, accompanied with a memorandum, as follows: " We are advised that maker has made arrangements with Oil Well Supply Co. for renewal." The Eaton, Cole & Burnham Co., without any inquiry of the Oil Well Supply Co., although their members and officers were in part the same, paid and lifted the note ; and thereafter, the Oil Well Supply Co., with full knowledge of the facts, paid the Eaton, Cole & Burnham Co., and lifted the note, before bringing this suit.

At the close of the testimony the court, on motion of the defendant, entered a judgment of compulsory nonsuit, with leave, etc. A motion to take off the nonsuit having been argued, the court, EWING, P. J., filed an opinion, which, after reciting the above stated facts, proceeded as follows :

The Exchange bank, by its default, was clearly liable to the Broadway bank, the holder of the note. Was it liable to the indorsers ?

This is not a case where the Broadway bank held the note for collection or as agent for the indorsers. The only interest the indorsers had concerning the note was a contingent liability, that in case payment was demanded of the makers at maturity, and they failed to pay, and due notice was given of the default to the indorsers, they would have to pay the note. When the 27th of April was allowed to pass without a demand on the makers, the Oil Well Supply Co. had neither interest in, title to, or liability on the note. They were not in any way injured by the neglect of the Exchange bank in not presenting the note for payment. When the Eaton, Cole & Burnham Co. paid the note to the Broadway bank, they were volunteers. If, as claimed, they were the agents of the Oil Well Supply Co., they should have inquired of their principals before paying. There is no privity of contract between the Exchange bank and the present plaintiffs, on which to found the action, and, as before said, there was no injury done to them by the failure to present the note for payment.

We are unable to see that the letter of Mr. Long, cashier of the Exchange bank, to the Broadway bank, renders the former bank liable to the Oil Well Supply Co. Had that letter been presented to any of the indorsers, and they had paid the note, it would have been an admission that they had some arrangement with the makers. It was of itself enough to put them on inquiry. The memorandum sent by the Broadway bank was not justified by the letter of the cashier of the Exchange bank; and for that memorandum the latter bank cannot be held liable. We are unable to see that in any aspect of the case the defendant is liable to the plaintiff.

And, now, February 23, 1889, after argument, and upon consideration, the court refuses to take off the nonsuit heretofore entered.

Thereupon the plaintiff took this appeal, specifying that the court erred in entering the judgment of nonsuit, and in refusing the plaintiff's motion to vacate said judgment.

*Mr. M. A. Woodward*, for the appellant:

We claim the right to recover both on the ground of negligence and on that of deceit. We meet the position of the court below, that the defendant entered into no contract relation with the plaintiff and owed it no duty, because, as was assumed, the Broadway bank, having discounted the note, was its owner, with the following positions:

1. The plaintiff was the true legal owner of the Davis & Moore note all the time, and the Broadway bank, which discounted it, only held it as collateral for the loan made upon it by way of discount. There is a distinction between buying and discounting; the latter is only a means of loaning money, and the title to the discounted paper does not pass: Fleckner v. Bank, 8 Wheat. 338; Eagle Bank v. Regency, 33 N. Y. 613; Farmers etc. Bank v. Baldwin, 23 Minn. 205 (23 Am. Rep. 683); Newall v. Doty, 6 Conn. 83; Lloyd v. Kuen, 2 Conn. 180; Ballinger v. Edwards, 4 Ired. Eq. 449; Assignee of M. v. Lafayette, 3 McL. 597; Morse on Banks and Banking, § 73.

2. The defendant is liable for its neglect of duty to the plaintiff as a party interested in the note. It is said that such

liability does not exist, for the reason that any right of action the plaintiff may have must be against the Broadway bank. This position would be good in New York, where the rule is exceptional, but under the general rule which prevails here, each of a series of banks, handling a note for collection, is directly responsible to the owner for its own negligence : Bank v. Goodman, 109 Pa. 426 ; Fabens v. Bank, 23 Pick. 330 ; Dorchester etc. Bank v. Bank, 1 Cush. 177 ; Morse on Banks and Banking, § 250.  It is claimed that this rule applies only to paper put in bank for transmission, and not to that handled for collection ; but the entire reasoning of the cases we have cited is against any such distinction.

3. It is said that even if we were interested in the note, we had no contract relation with the defendant on which to ground a right of action.  But it is settled that any one interested and damaged may sue, whether known to the defendant or not : McKinster v. Bank, 9 Wend. 46 ; Bank v. McKinster, 11 Wend. 473 ; Fabens v. Bank, 23 Pick. 330 ; Davey v. Jones, 42 N. J. L. 29 (36 Am. Rep. 505) ; Sylvester v. Swan, 5 Allen 135 (81 Am. Dec. 734) ; Whitten v. Hayden, 7 Allen 407 ; Newell v. Doty, 6 Conn. 83 ; Branch Bank v. Knox, 1 Ala. 148 ; Morse on Banks and Banking, § 252.  The plaintiff is interested in this note : (*a*) as owner and indorser ; (*b*) because of the effect of non-payment upon its commercial credit ; and (*c*) as a party suffering a loss through the fact that its agent was misled, and also by supposing the paper had been honored and the makers were still worthy of credit.

4. The idea that the use of the New York custom of placing the note in the hands of a broker to procure its discount had any effect upon our rights is a mere evasion.  Although this is called selling the note, it is plain that the broker was a mere go-between to procure the discount, as his name implies.  The misrepresentation in the letter to the Broadway bank was manifestly intended to make that bank an innocent instrument in deceiving our agent, and to bring about exactly what did happen.  This intention makes the defendant liable : Freeman v. Cooke, 2 Exch. 654 ; Leather Manf. Bank v. Morgan, 117 U. S. 96 ; Harden v. Bank, 51 Md. 562 ; Manf. Bank v. Hazard, 30 N. Y. 226 ; Langridge v. Levy, 2 M. & W. 519.  That language naturally leads one to suppose the existence of a fact,

and is enough to make it a representation in law: Bigelow on Fraud, 467; Lee v. Jones, 17 C. B., N. S., 482.

5. A party who has effected his purpose by a misrepresentation cannot deny its materiality, and the courts will not be astute that a particular one of several connected inducements was not alone adequate to the damage: Bigelow on Fraud, 497; Smith v. Kay, 7 H. L. 750; James v. Hodsden, 47 Vt., 127; Reynell v. Spage, 1 De G. M. & G. 660. False statements need not be made to the plaintiff directly, in order to support an action of deceit: Carbill v. Jacks, 43 Ark. 454; Eaton v. Avary, 83 N. Y. 31; Carten v. Hayden, 78 Me. 528; Langridge v. Levy, 2 M. & W. 519; Alexander v. Beresford, 27 Miss. 747 (61 Am. Dec. 538).

*Mr. George P. Graver* (with him *Mr. D. T. Watson*), for the appellee:

1. In view of the testimony that the note was placed in the hands of the broker for sale, and of the usual effect of the indorsement and delivery of negotiable paper, the proposition that the plaintiff continued its owner all the time is certainly novel. The cases cited in the support of it warrant no such conclusion. None of them holds that the title does not pass by discounting paper. That it does pass is sustained by: National Bank v. Perry, 2 W. N. 484; Gaul v. Willis, 26 Pa. 261; Moorehead v. Gilmore, 77 Pa. 123. When the note was discounted by the Broadway bank, it became the owner. The plaintiff then had no concern with the paper except its contingent liability as indorser. After the failure to present at maturity it was discharged from this liability and had no further interest. The Eaton, Cole & Burnham Co. in afterwards lifting the note was a volunteer. The purpose to preserve its credit thereby was insufficient to render the payment involuntary: Harvey v. Girard N. Bank, 119 Pa. 213.

2. Bank v. Goodman, 109 Pa. 422; Fabens v. Bank, 23 Pick. 330, and Dorchester etc. Bank v. Bank, 1 Cush. 177, have no application here. In each of those cases the contract was simply for the transmission of paper to a distant place for collection, and not a contract for collection. The nature and effect of the former contract are indicated in Bank v. Goodman, supra. The Broadway bank did not receive this note for transmission,

but discounted it. When it was sent to the defendant bank for collection, the defendant became the agent of the New York bank, not of the plaintiff. There was no privity of contract between the plaintiff and defendant, and the former can recover, if at all, only from the bank with which it contracted: Exchange N. Bank v. Bank, 112 U. S. 276; Reeves v. Bank, 8 Ohio 465; Montgomery Bank v. Bank, 3 Seld. 459; Commercial Bank v. Bank, 1 Kern. 205; Hyde v. Bank, 7 Biss. 156; Bradstreet v. Everson, 72 Pa. 124.

3. The Eaton, Cole & Burnham Co. could not have been deceived into lifting the note by the letter of the defendant's cashier. Manifestly that letter was sent, not to deceive the indorsers, but to have the Broadway bank inquire whether such an arrangement as was indicated had been made, and if so, see that it was carried out. If that letter had been shown to the indorsers, it would not have deceived them. They would have known, of course, whether such an arrangement as referred to had been made by them, and if the note had been lifted it would have been an admission that the arrangement had been made. If it is true that the memorandum sent with the note by the Broadway bank induced the lifting of it, this effect was produced by the deviation from the statement made in the letter, for which the defendant is not responsible. There was nothing in the letter to justify the memorandum written at the New York bank.

OPINION, MR. JUSTICE GREEN:

We think that our decision in the case of Harvey v. Girard N. Bank, 119 Pa. 212, covers all that is material in the present case, so far as the mere technical relation of the parties to this suit is concerned. It is not necessary to discuss the question of the liability of the defendant bank for its negligence in not duly presenting the note for payment, because there is no question about it. Of course, it was liable, and that liability was conceded by the bank in its letter to the Broadway bank, in which it offered to give credit to the latter bank for the amount of the note, if the note was not otherwise arranged. But the note was otherwise arranged. It was voluntarily paid by a party who was a mere indorser, the Eaton, Cole & Burnham Co., although that party was entirely discharged of all liability on

the note at the time of the payment. The discharge from liability was more clear in this case than it was in the case of Harvey v. Girard N. Bank, above referred to, for in the latter case the draft was presented in time for payment, but it was by mail, and not by messenger, and this difference in the mode of presentment was the sole cause of the loss. But in the present case, the note was not presented for payment until a whole month had elapsed from the time of its maturity, and all the indorsers on the note were absolutely discharged of all liability on it during the whole of that time. The Eaton, Cole & Burnham Co. and the plaintiff, therefore, well knew, at the time of the payment of the note, that they were subject to no liability upon the note; and their payment of it was a mere voluntary payment, which, in itself, could give them, or either of them, no right of action against the defendant. All of this was decided in the case of Harvey v. Girard N. Bank, and is the undoubted law.

But it is earnestly contended that this is an action for deceit and that a recovery can be had on the ground that the plaintiff was induced to make the payment by means of the fraud and deceit of the defendant, and therefore can recover in damages for that cause. We think it would be quite difficult to make out a case of deceit upon any view of the case, because there was no communication of any kind between the defendant and the plaintiff, and because, also, the Broadway bank merely said to the Eaton, Cole & Burnham Co., in its memorandum: "We are advised that maker has made arrangements with Oil Well Supply Co. for renewal." This is not an assertion that an arrangement for renewal had been actually made, but merely that the bank was so advised, and the fact of such advice was strictly true. But as this memorandum was sent to persons who were the agents of the payee, the present plaintiff, who must necessarily have known whether any arrangement for renewal had been made, the memorandum or statement could not be deceptive. Most certainly it was the duty of the Eaton, Cole & Burnham Co., either as agents of the plaintiff or as indorsers, to make inquiry as to the truth of the fact suggested in the memorandum before making payment. The expression in the letter of the defendant's cashier, which is claimed to be the foundation of the deceit, was in these words: "The makers were

then notified, and they say an arrangement with indorsers has been made for its renewal." As the Eaton, Cole & Burnham Co. was one of the indorsers, they would, of course, know whether they had agreed to such an arrangement, and as agent for the plaintiff it was their clear duty to inquire of the plaintiff, before making payment, whether it, the Oil Well Supply Co. Limited, had made any such arrangement. But the Eaton, Cole & Burnham Co. did not act upon the statement contained in the letter of the defendant's cashier; they did not see it before payment; but they acted, if at all influenced by any statement, only upon the memorandum of the Broadway bank, and that was a mere statement that they *had been advised* that an arrangement for renewal had been made. Such a statement could not possibly deceive, since it asserted nothing as a fact except the advice. But, again, it could not be deceptive as to these parties, because it was at best a suggestion as to a possible arrangement which they or their principal had made, and as to either they were necessarily charged with knowledge or the acquisition of knowledge before making payment. Of course, there was no coercion or compulsion to make the payment. It was entirely and absolutely voluntary, under no liability of any kind, and not made under any circumstances which can legally be regarded as an inducing deception.

Judgment affirmed.