# William B. Craig v. Borough of Shippensburg, Appellant..

*Charge of court—Neglect to request particular instructions—Effect of verdict.*

In the absence of requests touching particular points, it is too late to complain of the charge after verdict.

*Defective assignment—Rules of court.*

An assignment is defective and violates the rules of court which assigns. the "whole charge as quite inconsistent and an inadequate presentation of the case as to the character of the evidence and measure of damage."

*Waters and water rights—Diversion of water—Measure of damages.*

Water having been diverted by an upper riparian owner the measure of damage to the lower riparian owner of pasture land property includes. actual expenses incurred by reason of such diversion, in watering stock, injury to stock, loss of quantity and quality of milk, and injury to the pasture itself by the diversion of water in the stream.

Argued March 13, 1899.   Appeal, No. 1, March T., 1899, by defendant, from judgment of C. P. Cumberland Co., on verdict for plaintiff.   Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ.   Affirmed. Opinion by SMITH, J.

Trespass.   Before McCLURE, P. J., of the 17th judicial district, specially presiding.

The facts sufficiently appear from the charge of the court, which was in part as follows :

The contention of the plaintiff here is, that this stream, while he admits that for certain years, in fact almost every year, I believe, it became dry during certain seasons, after the dam was erected and the water diverted by the defendant, it was dry very much longer than before, so that while before the dam was erected the water ran an average of nine months in the year, since it was erected it has flowed but four and a half months to five months during the year.

Now, of course, the defendant would not be responsible for damages for the time the stream would otherwise have been dry if it had not diverted the water; that is, if the stream was naturally dry four months in the year before the dam was erected, it should not pay damages for that, but only the damages it has caused the plaintiff by the diversion of the stream, and that would be the increase in the time the stream is dry by reason of that diversion.

The plaintiff's contention here is, that he has some meadow lands which he used for pasturage, through which the stream ran, and also other fields which were connected with the meadow land in such a way that by opening the bars the cattle could go to water without any trouble, and would not require looking after, and would return from it; that at that time and even up to the time of the erection of the dam, water would have to be pumped for a certain time of the year, but since then he claims he had to pump it longer, and the cattle must be driven to the pump, and there furnished with water.   He claims damages for this extra pumping which is made necessary by the diversion of the water in the stream.

There are three or four elements of damage he claims, that

his cattle have diminished in value, and in the yield of milk, and the expense in driving and pumping water for them, whatever that may be. It is not enough that the plaintiff sets up some arbitrary figure, but you should be satisfied if he makes a statement that is warranted by the facts in the case. So far as his cattle are concerned, you should allow him for damages for the diminished value of the cattle by reason of the decrease in the yield of milk, extra trouble, etc., in driving them during the extra months, that is, the months which the stream was dry over and above when it was dry before, if you find it to be caused by the diversion of the water. He says he has been obliged to erect a fence at $25.00, and maintain it, also extra wear on pump and trough, something like $3.00 a year; he also contends that the greenhouse and poultry yard were not supplied with water by reason of the well going dry. . . .

[He also contends that the meadow has yielded less by reason of water not flowing along there, the pasture has been poor, and the crop growing upon it less ; he would be entitled to damages for that, if you so find.] [1]

In this case, gentlemen, you will remember that you are not to give the plaintiff damages for the permanent injury of the property. It is not set up, and there is no claim for that. If this run was taken under the right of eminent domain, and a permanent appropriation of the stream and proper proceedings were started, it would be the duty of the jury to settle the loss of the plaintiff for all time. But that is not this case. You will be careful to keep from your consideration therefore anything which might lead you to consider damages for the permanent injury to this property, but you must consider the actual damages the plaintiff has suffered, the actual damages to his property from August, 1892, to June 14, 1897, the time this suit was brought.

Also as to the pumping, there is some testimony as to the cost for pumping ; on cross-examination the evidence was that he paid Mrs. Neff $1.00 a month for pumping during 1895, and Mr. Preston's son also for pumping. Of course the plaintiff is entitled to whatever he had to pay, and whatever extra labor was placed upon him in order to place himself in the same position as before the water was diverted.

The defendant's contention is, that no damages have been

sustained by this plaintiff by reason of the taking of the water; that it has not taken such a quantity of water as to affect him; that there is a long distance between the dam and the farm of plaintiff, and in that distance there are sink holes, and sandy soil which absorbs the water, so that the taking of the water has not in the least lengthened the time which the stream is dry at the plaintiff's farm. Now, if that be true, it has not injured the plaintiff, and could not be compelled to pay him. This is a question of fact you will have to determine.

The further contention is that the natural flow of the water has been less every season, that is, during many years past through the cutting of timber the natural flow of the water has been less, and even if the borough had not diverted it, the water would not have run to the farm of the plaintiff. That is a question you will have to determine, whether or not this taking of the water from the stream has lengthened the time the bed of the stream upon plaintiff's property is dry.

[Counsel say the damages claimed by the plaintiff are not proven, and that you must only allow him for the time, labor and money spent in his behalf. We instruct you that that is true, but as to the proof, we are not able to say to you that they are not proven. Here is a question of fact for you to determine, and you will give such actual damages as you believe the plaintiff has established in this case.] [2]

Exception noted for the defendant.

Verdict for $800 reduced by stipulation to $500 and judgment entered thereon. Defendant appealed.

*Errors assigned* were (1, 2) to portions of the judge's charge, reciting same. (3) The whole charge is quite inconsistent and an inadequate presentation of the case as to the character of evidence and measure of damages.

*J. W. Wetzel,* with him *J. S. Omwake* and *Conrad Hambleton,* for appellant.—Considering the first assignment, we contend that the plaintiff made no claim for damages for loss to growing crops, as alleged by the learned court below.

Our contention is therefore that there was nothing in the evidence to sustain the submission to the jury of the loss of growing crops as an element of damage. The plaintiff did not claim it.

This was manifest error and no doubt helped the jury to swell the verdict.

Considering the second and third assignments, we contend that the evidence to sustain the several elements of damage was so vague, indefinite and speculative that the court should have disregarded it.

It was contended by the defendants that the fact having been admitted that in every year for variable periods the stream was dry through the small meadow of the plaintiff, he had to supply water for his cattle pasturing therein by pumping from his adjoining well. That if the diversion by the borough occasioned a longer period of dryness it was only necessary to provide for an extended period of pumping, and that the true measure of damages was the additional expense to supply the water for the extended period of time. This, the court in the paragraph of the charge contained in the second assignment affirmed, but notwithstanding submitted to the jury the question of damages on the speculative guesswork of estimates by the plaintiff.

This court in the case of The Standard Plate Glass Co. v. The Butler Water Company, 5 Pa. Superior Ct. 563, laid down the rule of measure of damages to be, " the expense which the lower owner may be put to in order to supply water to take the place of the water that would have flowed to its land if it had not been diverted by the upper owner."

Now in this case, the only use the plaintiff put this stream to was water for his cattle.

It admittedly dried up every summer; water must be supplied them for the cattle; how much longer did the diversion continue the dryness of the stream, and how much expense was the plaintiff put to, in order to continue the supply?

This was the question involved, and this alone should have been submitted.

*Geo. Edward Mills*, with him *E. J. McCune* and *W. F. Sadler*, for appellee.—The charge of the court in respect to the measure of damages was perfectly fair and in accord with the principles of law upon the subject.

The estimate of damage by the plaintiff was directly in harmony with the doctrine of Glass Co. v. Water Co., 5 Pa. Supe-

rior Ct. 563, which holds that the expense which the plaintiff is put to to make good his loss is the measure of his damages. The consumption of the plaintiff's own labor, the employment of additional labor, and money expended for building fences, repairing pumps, and vacating land, carry an actual money loss, as well also as the loss of pasture. To the same effect is the case of Hogg v. Water Co., 168 Pa. 457, where it is held that loss of rental value, the number of cattle kept before and after the taking of the water, and extra expense in duplicating mill dam, may be shown as items of damage.

The same principle is stated in Lord v. Water Co., 135 Pa. 122.

The third assignment of error is meaningless and simply put in as a drag net, and only indicates that defendant was displeased with the finding of the jury.

No bill of exceptions was asked for by defendant or sealed, relating to the admission of any evidence. Only one point was put to the court by the defendant, which was affirmed in his behalf.

OPINION BY SMITH, J., October 9, 1899 :

This suit was brought by the plaintiff to recover damages of the defendant for diverting water from a stream which flows through the land of both parties, as well as the intervening lands of others. The defendant holds the upper land by lease and constructed a dam on it, from which the water is carried to the borough of Shippensburg through a pipe, also maintained by the defendant. The plaintiff complains that the water thus diverted and piped is more than a riparian owner has a right to remove, and that by reason of such diversion the stream is exhausted below, that at certain seasons no water can be found in the bed of the stream over his premises, and he complains that by reason of this deprivation of water he has been damaged by the defendant. It is conceded that both parties have riparian rights in the stream and the diversion of the water by pipe is also admitted. The controversy is over the extent and the duration of the alleged injurious diversion and the nature and amount of the plaintiff's damages. The elements of damage seem to have been confined mainly to the live stock, due to "the shrinkage of the pasture incident to the drying up of the stream." This necessarily involved the consideration of the condition of

the meadows affected, before and after the alleged diversion of the water by the defendant, and the manner and extent of the damage by reason of the condition of the cattle, their losing in value, the diminution of milk in quantity and quality, and whatever extra labor was placed on the plaintiff by reason of the diversion, in order to compensate him for the injury thus caused. Several witnesses were called touching these points and the whole question was submitted to the jury under the evidence offered on both sides. The jury were not permitted to give damages for any permanent injury to the property, they were instructed to exclude this from their consideration and to consider only the actual damages the plaintiff suffered to his property during the period sued for. A verdict was rendered for the plaintiff, which, after argument, was reduced more than one third, whereupon judgment was entered and this appeal was taken. There is no just ground assigned for this appeal, and so far as we can see the record affords no sound reason for it. The first specification clearly refers to the crop of growing grass and not to "growing crops" of cereals or emblements, in the legal sense. In the sense in which the court used the term growing crop it was perfectly correct and, in connection with the other parts of the charge, must have been correctly understood by the jury. While it is true, as argued by the appellant, that the plaintiff did not claim damage for "the loss of way-going crops" meaning thereby cereals and such vegetable chattels as are known as emblements, a claim was made for damage to growing grass and its drying up, and, under the evidence, the court was right in submitting that to the jury.

There was but one request for charge made to the court below, which was a point by the defendant and was affirmed. If he desired the court to give further instructions on the measure of damages than those already given, he should have asked for them. The charge was sufficient, embracing all the material features of the case. In the absence of requests touching particular points, it is too late to complain of the charge after verdict. The first and second specifications are overruled. The third specification is in violation of our rules and is too indefinite to call for discussion.

Judgment affirmed.