# J. W. Mott *v.* The Consumers' Water Company of Montrose, Appellant.

*Waters—Diversion of waters—Water company.*

Where a water company takes title to a lake and a dam in a stream which is an outlet of the lake, over which dam is an ancient roadway, and the company is charged by the conveyance with the duty of maintaining the dam and the roadway, it may stop the flow of the water for a reasonable time to make repairs to them, but it has no right to shut off the water so as to make material changes in the dam, whereby the water in the lake above the dam may be raised, and at times, entirely shut off; and if it shuts off the water for such purpose a lower riparian owner who is injured may recover actual damages from it.

In an action against a water company to recover damages for the obstruction and diversion of water, the plaintiff may testify as to conversations between himself and the officers of the water company, for the purpose of showing that he had not acquiesced in the invasion of his rights.

Argued March 16, 1898.    Appeal, No. 372, Jan. T., 1897, by defendant, from judgment of C. P. Susquehanna Co., Aug. T., 1893, No. 325, on verdict for plaintiff. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ.    Affirmed.

Trespass to recover damages for the obstruction of a stream. Before PURDY, P. J., of the 22d judicial district, specially presiding.

At the trial it appeared that in 1816, a dam was constructed across a stream which was the outlet of Jones's lake. A public road from Montrose to New Milford crossed on the embankment forming the dam. By various conveyances the dam became vested in the defendant company, which took title charged with the duty of maintaining the dam and the road. Plaintiff operated a gristmill at a point half a mile below the dam. The evidence tended to show that the defendant obstructed the flow of the water for a considerable time for the purpose of raising the water in the lake.

At the trial plaintiff testified as follows:

" Q.  State whether you had any conversation at any time with the president and secretary of this Consumers' Water Company in reference to their taking the water of Jones's lake?  A.  I did; yes, sir.  Q.  Now, state the first time."

Defendant objected to the question as incompetent, irrelevant and immaterial.

By the Court: I understand this is a conversation which is alleged to have occurred prior to the construction of the works.

Mr. Post, of counsel for plaintiff: " A. Yes, sir."

Objection overruled. Defendant excepts. Bill sealed for defendant. [6]

" Q. If you said anything to them in reference to their taking the water to injure you in any way, state what you said to them. A. They asked me what I thought it would be worth, and I asked them if they had read their Bible, and they said they had; I asked if they knew about Esau, and they said yes—(objected to). I told them it would be certainly worth five or six thousand— Q. Just come right to what you said to them. A. I told them if they closed the gate up there and had the full control of it, I should certainly want five or six thousand dollars."

Miss Emma Mott, plaintiff's daughter, called by him testified as follows :

" Q. Were you there the day Mr. Welles and Mr. Stocker came there to talk with your father? A. I was; yes, sir. Q. When was that? A. I couldn't tell you the date, but it was in September sometime, I think. Q. September of what year? A. 1892. Q. Before they commenced operations at the lake? A. Yes, sir. Q. What was said between them about their taking the water of the lake and doing your father damage, if anything? A. Well, I only heard a little of the conversation as I passed through the room while they were talking, and I heard my father say he could not tell, he had not thought much about it, but he should want five or six thousand dollars, any way. Q. For what? A. Why, for the use of the water; for their taking the water from him." [6]

Plaintiff's point and the answer thereto were as follows :

1. Under all the evidence in this case the plaintiff is entitled to recover nominal damages, and in addition thereto all such actual damages as the jury are satisfied from all the evidence in the case the plaintiff sustained by reason of the unlawful detention and diversion of the water, as complained of prior to July 13, 1893, the date of the commencement of this suit. *Answer:* This is affirmed. We say to you, in that connection, that the burden of proving such additional or special damages

is upon the plaintiff, and his damages must be limited to such as accrued between October 11, 1892, and July 13, 1893, by reason of the wrongful acts of the defendant. [1]

Defendant's points and the answers thereto among others were as follows:

1. The defendant had the right to repair the dam and to stop the flow of water for that purpose for a reasonable time in which to make the repairs to it. *Answer:* That point is refused. [2]

2. The defendant is not liable for any damage until the time when the gate was closed and the supply of water shut off, and if the gate was not closed until the last of February or first of March, 1893, then previous to that time no damage can be charged against the defendant. *Answer:* That point is refused. [3]

3. If the gate was not closed until the last of February or first of March, then it appearing from the plaintiff's evidence that he had water enough until June 20 or 21, 1893, then if the plaintiff is entitled to damages at all, he is entitled only to such damage as he sustained from June 20 or 21 to July 13, twenty-two or twenty-three days in all. *Answer:* That point is refused. [4]

6. When the diversion of the water does not sensibly diminish the flow, and no special damage results, there is no cause of action, and in such case the defendant is entitled to the verdict. *Answer:* That point is refused, as applicable to this case. The testimony is that the defendant took from this lake a considerable quantity of water which was diverted and was not returned to this creek, and as, without complaint or action on the part of lower riparian owners, this taking of the water by the defendant would in time ripen into a right to so take it, we think that in order to establish the rights of the plaintiff he is entitled to nominal damages, although no special damages resulted to him. We think that if the plaintiff had no mill on this stream, still he might maintain an action against the defendant for so taking the water, in order to prevent the acquisition by the defendant of a prescriptive right to so take and divert the water which might at some future time be useful to him or to his property. But in such case he would be entitled to nominal damages only. [5]

Verdict and judgment for plaintiff for $1,086.39. Defendant appealed.

*Errors assigned* were (1–5) above instructions, quoting them ; (6) rulings on evidence, quoting the bill of exceptions.

*A. H. McCollum*, with him *A. B. Smith, Jr.*, for appellant.— One riparian owner cannot maintain an action against an upper proprietor for a diversion of the water of a natural watercourse flowing through their lands, unless such diversion causes the plaintiff actual perceptible damage : Elliot v. Fitchburg R. R., 10 Cushing (Mass.), 191 ; Searle v. Gardner, 22 W. N. C. 73.

The reasonableness of the detention of water, by the riparian owner above, to the injury of the riparian owner below, depending, as it must, on the nature and size of the stream, as well as the business to which it is subservient, and on the ever varying circumstances of each particular case must be determined by the jury, and not by the court : Hetrich v. Deachler, 6 Pa. 32 ; Hoy v. Sterrett, 2 Watts, 331.

The principle seems to be that a watercourse is real property. The title to the bed of the stream is in the riparian owner, and he has a right to the reasonable use of the water, and such right is just and reasonable which does no sensible injury to the owner below : Searle v. Gardner, 22 W. N. C. 73.

Incompetent evidence which tends strongly to prejudice a party should be withdrawn before the argument, and in such manner as to leave it reasonably certain that it did not taint the relevant testimony : Albert v. Miller, 7 W. N. C. 477 ; Del. & Hudson Canal Co. v. Barnes, 31 Pa. 196 ; Huntingdon, etc., R. R. v. Decker, 82 Pa. 124 ; Shaeffer v. Kreitzer, 6 Binney, 432 ; Nash v. Gilkeson, 5 S. & R. 354.

*J. M. Kelly*, with him *William P. Post*, for appellee.—In America, the rule that the action on a case lies for any infringement of the plaintiff's right, although there are no actual damages, is sustained by an almost unbroken line of authorities : Gould on Waters, sec. 410 ; Del. & Hudson Canal Co. v. Torrey, 33 Pa. 143 ; Kirkham v. Sharp, 1 Wh. 333 ; Williams v. Esling, 4 Pa. 486 ; Pastorius v. Fisher, 1 Rawle, 27 ; Ripka v. Sergeant, 7 W. & S. 9 ; Miller v. Miller, 9 Pa. 74 ; 1 Sedgwick

on Damages (7th ed.), 278; Clark v. R. R., 145 Pa. 438; Hogg
v. Connellsville Water Co., 168 Pa. 459; Lord v. Meadville
Water Co., 135 Pa. 122; Wheatley v. Chrisman, 24 Pa. 302;
Omerod v. Lamorden Mill Co., 34 English Rep. 382; Black-
stone's Commentaries, Book 3, 218; Casebeer v. Mowry, 55
Pa. 423.

The evidence of plaintiff and his daughter was admissible to
show that plaintiff had not acquiesced in the invasion of his
rights: Washburn on Easements, *62; Chapman v. Chapman,
59 Pa. 214; Logan v. Gardner, 26 W. N. C. 497; Woods v.
Wilson, 37 Pa. 379; 1 Sedgwick on Damages, 271.

Juries may give punitive damages in cases of this character:
Penna. R. Co. v. Eby, 107 Pa. 166; Haupt's App., 125 Pa.
211; Penna. R. Co. v. Miller, 112 Pa. 34; Shaeffer v. Kreitzer,
6 Binn. 432; Nash v. Gilkeson, 5 S. & R. 354; Unangst v.
Kraemer, 8 W. & S. 401; Miller v. Miller, 4 Pa. 319; Albert
v. Miller, 7 W. N. C. 477; Huntingdon, etc., R. R. v. Decker,
82 Pa. 119; Rahlfing v. Heidrick, 4 Phila. 3.

OPINION BY MR. JUSTICE FELL, November 14, 1898:

This action was to recover damages for the unlawful diver-
sion by defendant of the water of a stream which furnished
power for the plaintiff's factory. The stream in question is
the outlet of a small lake which the defendant purchased in
order to secure a supply of water to furnish the borough of
Montrose. Some eighty years ago a dam was constructed across
the stream at a point near the lake to secure a supply of water
for the use of a gristmill. The plaintiff's factory, which has
been in operation seventy years, is half a mile further down the
stream. The conveyance to the defendant included the dam
and a roadway which had been maintained over it for many
years, first as a public road and afterwards as a way to the
grantor's buildings, and it accepted the conveyance charged with
the duty of maintaining the dam and the way over it.

It seems to have been conceded at the trial that the defend-
ant had no right to divert the water of the lake for the purpose
of sale, to the injury of the plaintiff, and it claimed not to have
done so, and that the detention of water had been for a reason-
able time only in order that repairs might be made to the dam
and the roadway. These were the issues of fact raised, and the

contentions of the parties were very fairly and clearly presented in the charge, to which no exception was taken. All of the assignments of error except the last are to the answers to points. Some of these answers are not in the abstract strictly accurate, but when they are considered with reference to the testimony no error appears which calls for a reversal of the judgment.

The first assignment relates to the right to recover nominal damages for the diversion of water from the stream in the absence of proof of actual loss to the plaintiff resulting therefrom, and the sixth assignment raises the same question. The full answer to the point presented is not given in the sixth assignment. The point was considered at the trial as touching the question of nominal damages only, and under the testimony it could have had no other application to the case. As the verdict is based upon the finding that actual damage had been sustained, it is unnecessary to consider these assignments. The third assignment should be sustained if the flow of water was stopped for the purpose of repairing the roadway and dam. This the defendant had the right, and was under the duty to its grantor, to do, and a lower riparian owner could not recover against it unless the flow was interrupted for an unreasonable length of time. But the whole testimony shows that the water was shut off in order that material changes might be made in the dam, whereby the water in the lake could be raised and at times entirely shut off. The evident purpose was not to repair the roadway and dam for the use of the defendant's grantor, but to increase the storage capacity of the lake, and to give the defendant entire control of the water it contained. The third and fourth assignments are without merit. As there was evidence that the water was held back for a considerable time before the gate was put in, the date when it was put in was not the starting point in computing the plaintiff's loss. The testimony of the plaintiff and his daughter as to conversations had by him with officers of the water company was admitted for the purpose of showing that he had not acquiesced in the invasion of his rights. It was admitted under a distinct offer to that effect, and the learned judge in his charge restricted it to this purpose, and cautioned the jury not to consider it in determining the amount of the verdict if they found that the plaintiff was entitled to recover.

The judgment is affirmed.