# Kraft v. Hanover & McSherrystown Water Company, Appellant.

*Waters—Water companies—Diversion of water—Mills—Measure of damages—Evidence—Question for jury.*

1. In an action to recover damages for the alleged unlawful diversion by the defendant of the waters of a stream on which plaintiff's mill was located, by pumping water therefrom at various times within six years before the bringing of the action, it appeared that after defendant's pumping station had been installed, a sensible diminution in the flow of water had occurred, though the amount of water withdrawn did not appear. Plaintiff contended that he was thereby compelled to use power and to incur additional expense in the operation of his mill, and sought to measure his damages by these outlays. There was evidence that the diminution in the flow of water was not due entirely to defendant's pumping. The jury was instructed that plaintiff could recover only for such expenditures as were compelled by defendant's acts, and found a verdict for plaintiff which the court held excessive and reduced to a sum reasonable under the evidence for which judgment was entered. *Held,* no error.

2. In such a case the introduction of evidence of the average amount of water in the stream for a period prior to the installation of defendant's pumping station was not prejudicial to defendant, where it appeared therefrom that the water was at times so low that auxiliary power was required to run plaintiff's mill.

Argued April 20, 1913. Appeal, No. 198, Jan. T.,

1912, by defendant, from judgment of C. P. York Co., Aug. Term, 1910, No. 112, on reduced verdict for plaintiff, in case of William G. Kraft v. Hanover & McSherrystown Water Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for the alleged diminution of a stream by unlawfully drawing water therefrom.

The facts appear in the following opinion of WANNER, P. J., sur defendant's motion for a new trial:

The plaintiff in this case was entitled to recover such damages as the evidence showed that he had suffered at the hands of the defendant company, within a period of six years prior to the 12th day of July, 1910, on which day this suit was brought.

It is clear from the testimony on both sides of the case, that since the year 1896, the defendant has been pumping considerable quantities of water from the tributaries of the stream upon which the plaintiff's mill stands.

It also appears that during said period there has been a sensible diminution of the flow of water in that stream at the plaintiff's mill as compared with its condition prior to the commencement of the pumping in 1896.

The plaintiff's evidence, however, does not even approximately show the amount of water that was diverted from the stream at the pumping station of the defendant, or with much definiteness the proportionate shortage of water, and of water power at the plaintiff's mill. He contended, however, that there was a large reduction in the volume of the stream after the defendant's pumping began in 1896, which continued thereafter from 1904 to 1910, during the period covered by this suit.

The defendant offered evidence from the records of the pumping station showing the number of millions of gallons of water taken from the stream during the va-

rious months and indicating that the maximum pumping capacity of the station at no time between 1904 and 1910 exceeded four hundred gallons per minute.

It was further testified that that quantity of water would amount to about eight-tenths of one horse power delivered at the plaintiff's mill, and the estimated cost of one horse power per year was fixed at ninety dollars.

This evidence of the defendant was not specifically contradicted by the plaintiff who made no attempt to estimate these matters accurately. Much of the variation of the volume of the stream was admittedly the result of certain dry seasons in which the tributaries forming the stream on which the plaintiff's mill stands, were practically dried up at times. It also appeared that the use of steam power by the plaintiff at his mill had become necessary even prior to 1896 when the defendant's pumping began.

The plaintiff's evidence relating to the measure of his damages consisted chiefly of his own testimony as to the cost of providing steam power to take the place of water diverted from his mill by the defendant from 1904 to 1910.

No evidence was offered or admitted to show any general depreciation in the value of the plaintiff's property because of the taking of this water, or of any injuries of a permanent nature.

The plaintiff's items of claim consisted of the cost of the coal, labor, oil, &c., which he alleged were necessary to generate the steam power used to run his mill after the alleged shortage of water occurred, from 1904 to 1910.

But the jury were carefully instructed that the plaintiff was not entitled to recover the sum total of such expenses during the entire period of six years prior to the bringing of the suit, because it was manifestly not all made necessary by the defendant's pumping water from this stream, that there could be no recovery for the cost of such steam power as the plaintiff had to use be-

cause the dryness of the season had reduced the volume of the streams, nor for the cost of steam power used at times when the defendant's pumps were not in operation, or the use of which was made necessary by the diversion of the waters of the stream by any other person than the defendant. The jury was repeatedly instructed that the plaintiff could only recover the cost of such part of the steam power and of the operation of his steam engine, as the pumping of the water by defendant made it necessary to use in order to operate the plaintiff's mill to its former capacity.

The jury was further instructed that the plaintiff could not recover the cost of the new overshot wheel which was placed in his mill in 1907 unless the evidence showed that without it, it was not then possible to run the mill to its former capacity by the joint power of the engine and the remaining water, and unless the evidence also showed that the reduction of the water power was the direct result of the defendant's pumping.

The defendant complains of the admission of certain evidence showing the condition of the stream prior to the beginning of the period covered by this suit, viz, prior to July 12th, 1904. But it must be remembered that the pumping began in 1896, and the evidence relating to the previous volume of the stream as compared to what it was afterward, and what it was from 1904 to 1910, was only admitted to show the general fact that its volume had decreased after the defendant's pumping began. It also tended to show whether the diminution complained of was material or not. To show the stages of the water for a reasonable time prior to the date of the first pumping was a proper method of ascertaining the average condition of the stream, and was a more reliable maner of determining the real change of the conditions than to have limited the testimony to the precise date when the pumping began, or to a very brief period immediately preceding it. This admission of the evidence of the former conditions disclosed the fact that

the waters of the stream, had at times, gotten so low prior to 1896, that auxiliary steam power was necessary to run the plaintiff's mill, and that there had been wide fluctuations in the volume of the stream at different seasons.

The jury, therefore, instead of being misled by the evidence of former conditions into supposing that the subsequent change was wholly due to the defendant's pumping was shown thereby, that other factors entered into the resulting conditions which they were bound to consider.

The defendant's offer of the opinion of a witness, to the effect that as much water would be evaporated from the stream between the pumping station and the plaintiff's mill, as was pumped out by the defendant, was properly rejected. The extent of the subsequent evaporation of the stream did not qualify the fact that taking out four hundred gallons per minute diminished the volume of the stream that much. Evaporation was a constant factor whether the pumps ran or not.

The court, however, permitted defendant to show how much of the four hundred gallons per minute would have been evaporated in going to the plaintiff's mill, but no attempt was made to do so.

We have carefully re-examined all of the rulings of the court on offers of evidence, and also the answers to points which are complained of, and find no sufficient ground therein for granting a new trial in this case.

But a re-examination of the evidence as to the extent of the damages sustained by the plaintiff, convinces us that the verdict of the jury was excessive and not justified by the evidence of either party in this case. Not even the highest practical estimate given by the plaintiff himself of the cost of operating his steam engine, the expense of putting in the new overshot wheel; and his other items of damage, would approximate the amount of the verdict, viz: $2,500.00. What should be done under these circumstances, to prevent manifest injustice

to the defendant, is explicitly set forth in the following language of the Supreme Court in Hollinger v. York Railways Co., 225 Pa. 419: "In our judicial system, the primary duty of correcting an excessive verdict unquestionably rests with the trial court. It has the authority and is in possession of the facts which will warrant it in correcting an error of this kind. While it should not interfere with the functions of the jury and undertake to determine facts which is exclusively the province of the jury, yet when it is apparent that the jury has returned a verdict excessive in amount and clearly beyond what the evidence warrants, the court should set aside or reduce the verdict. This is a duty as imperative as any other which rests upon a trial court, and there should be no hesitancy in performing it."

Verdict for plaintiff for $2,550, which was reduced by the court to $1,922.49, and judgment was entered on the verdict as reduced. Defendant appealed.

*Errors assigned* were various rulings of the trial judge, various instructions to the jury, and the refusal of the court to enter judgment for defendant non obstante veredicto.

*Henry C. Niles,* with him *C. E. Ehrehart,* for appellant.

*Allen C. Wiest,* with him *William A. Allen* and *J. W. Gitt,* for appellee.

Per Curiam, June 27, 1913:

This appeal is from a judgment for the plaintiff in an action of trespass to recover damages caused by the pumping of water from a stream that furnished power for the plaintiff's mill. The assignments of error mainly relate to the sufficiency of the evidence to show the extent of the diminution of the volume of water and

a causal connection between the act of the defendant and the injury complained of. All questions raised by the appeal are satisfactorily disposed of in the opinion of the learned president judge of the Common Pleas, on which we affirm the judgment.

Judgment affirmed.