# Sebree v. Huntingdon Water Supply Company, Appellant.

*Water companies — Unlawful diversion of waters — Trespass — Measure of damages—Permanent or transient injury—Punitive damages—Sale of property—Right of action.*

1. Where an injury to real estate is permanent, the measure of damages is the difference in market value before and after the injury, or the cost of removing the obstruction, whichever is the lower amount.

2. Where the land of the riparian owner has been permanently injured by an unlawful diversion of water, the plaintiff has a right to damages for the permanent injury to the drainage and productivity of his land.

3. Where the entry was unlawful and the injury sustained is the result both of the permanent backing of the water, and the occasional flooding of the land in time of freshets, the plaintiff is also entitled to transient damages, for injuries caused by the floods negligently cast upon his land, to the injury of his crops, etc., and personal property, together with damages for delay in making compensation.

4. Where the plaintiff has purchased the land subsequent to the original entry, whatever injury accrued to the land before he acquired title belonged to the owner of the land at the time of the original entry, and would be recoverable in an action of trespass, if not barred by the statute of limitations. The owner, at the time of the entry, could have maintained trespass, ejectment, a bill in equity to abate, or could have demanded the filing of a bond, if the entry was originally made in the exercise of the power of eminent domain, and the right in any of these actions would have been personal. The subsequent purchaser of the real estate did not purchase them and should not be allowed to exercise them for his benefit. For actual injuries occurring before the plaintiff took title he has no action.

5. Where the injury complained of, is the flooding of the plaintiff's land by the raising of the defendant's dam, the measure of damages is not the difference in the market value as though no dam had been in existence at the time the plaintiff purchased the land, for he is only entitled to damages for the permanent injury to his land, resulting from the construction and maintenance of the dam at the height to which it was raised, subsequent to his purchase.

6. Where the injuries arising from floods are transient in their nature and belonged to the owner at the time of the particular injury, they should be clearly distinguished from damages for the permanent injury to the land. In such case it is reversible error to submit testimony relating to such damages to the jury, as elements of the permanent injury to the land and not as specific items, but as affecting the market value before and after the appropriation.

Argued October 28, 1918.  Appeal, No. 131, Oct. T., 1918, by defendant, from judgment of C. P. Huntingdon Co., Dec. T., 1917, No. 27, on verdict for plaintiff in case of J. Emmett Sebree v. Huntingdon Water Supply Company.  Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.  Reversed.

Trespass to recover damages for injuries to plaintiff's land resulting from the maintenance of a dam.  Before BAILEY, P. J.

The facts appear in the opinion of the Superior Court.

Verdict for plaintiff for $600 and judgment thereon. Defendant appealed.

*Errors assigned* were various rulings on evidence, the charge of the court and refusal of defendant's motion for a new trial.

*Samuel L. Spyker,* for appellant.—The measure of damages was the difference in the value of the land before and after the defendant increased the height of its dam. It must be confined to the period within which the defendant was in actual possession: McClinton v. R. R. Co., 66 Pa. 409; McFadden v. Johnson, 72 Pa. 335; Linton v. Water Co., 29 Pa. Superior Ct. 172; Losch's App., 109 Pa. 72; James v. Borough, 220 Pa. 490; Zell v. U. Society, 119 Pa. 390; Geible v. Smith, 146 Pa. 276.

*L. H. Beers,* and with him *H. W. Petriken,* for appellee, cited: Allen v. Kinston Co., 212 Pa. 54; Simes v.

Zane, 24 Pa. 242; Bethlehem Water Co. v. Yoder, 112
Pa. 144; Humphrey v. Irwin, 18 W. N. C. 451; Glass
Co. v. Water Co., 5 Pa. Superior Ct. 563.

OPINION BY WILLIAMS, J., July 17, 1919:

This was an action of trespass for injuries to real and
personal property arising from the erection and mainte-
nance of a dam.

Plaintiff recovered a verdict for permanent injuries to
his real estate, and from the judgment entered thereon,
defendant appeals.

The court refused judgment for plaintiff for the in-
juries to his personal property and plaintiff also appeals.

As there was but one action from which the two ap-
peals are taken, we will consider them together.

Plaintiff's second amended statement of claim avers
that (1) defendant is a duly incorporated water com-
pany; (2) plaintiff is now and has been since May 10,
1912, the owner of a lot of ground situated on Standing
Stone creek; (3) on and after May 10, 1912, defendant
unlawfully used a dam which was originally negligently
and unlawfully constructed of temporary material such
as logs and clay, now much decayed and without flood
gates; (4) before and since May 10, 1912, defendant
caused the height of the dam to be raised from two to
three feet thereby increasing each year the back water
on plaintiff's land and obstructing the drainage thereof,
constituting a nuisance; (5) during plaintiff's owner-
ship the dam had caused ordinary floods and freshets to
rise to a height of three or four feet on the land, destroy-
ing fences and growing crops from 1912 to 1917, to the
amount of $1,135, and gathered crops, stored on the land,
in 1915 and 1916, of the value of $475; (6) the rental
value had been reduced $280, and (7) the land had de-
preciated in market value in the sum of $3,000, because
it cannot be drained, and so cannot be sold as building
lots. The total damages claimed aggregated $4,890.

No answer was filed by defendant, but under Section 18 of the Practice Act of 1915, P. L. 483, the case was at issue on plaintiff's statement.

It appears from the testimony defendant was incorporated, October 4, 1900, under the laws of Pennsylvania, to supply water to the public in the Borough of Huntingdon; March 24, 1902, the directors of the company adopted a resolution reciting that the company had a dam in Standing Stone creek from which it pumps water to its distributing reservoir and had caused to be staked on the ground certain lands therein described to be taken for its uses under the right of eminent domain, being lands of two parties, naming them; proceeded to adopt and appropriate all the water of the creek at the point where the same was on the lands so described and on lands owned by the company, the lands and water so appropriated being necessary for corporate purposes; the officers were directed to purchase the land and settle with the lower riparian owners for the water taken, and if necessary, to have the same settled in the form provided by the act of assembly; subsequently, an agreement was entered into between Kate F. Blair and the Hunting Park and Road Association, the owners of the land the company had set aside as necessary for its corporate purposes, and the Huntingdon Water Supply Company, whereby the waters of the creek were conveyed to it for the term of ninety-nine years. The testimony further shows that ice became jammed in the creek above the dam in the winter, and forced water back on plaintiff's land to a point much higher than defendant's dam, and the ice could not get past defendant's dam as it had no flood-gates or spillway.

For the purposes of this case the verdict of the jury established that the injuries to plaintiff's property were caused by the dam backing the water of the creek upon his land, and we must seek the legal measure of damages in such case.

Was the injury to plaintiff's property to be measured

as for a permanent injury, or for a transitory injury, or for both?

The right to build a dam under the Act of March 23, 1803, 4 Sm. L. 20, was a declaration of a common law right, the enforcement or user of which was merely regulated by statute: Barclay, etc., Co. v. Ingham, 36 Pa. 194, and was in no sense a right of eminent domain: Monongahela, etc., Co. v. Coons, 6 W. & S. 101. Three kinds of damages have been given in cases in which were involved the relative rights and duties of those who construct obstructions and own land or property injured thereby: (a) nominal, to establish the right, and, consequently the trespass, where no actual damage was proven; (b) damages as for case or quare clausum fregit; and (c) for the permanent injury, where the evidence disclosed a permanent injury.

In Lynch v. Troxell, 207 Pa. 162, BROWN, J., says (171): "Under the instructions complained of in the eighth and ninth assignments of error, the jury may have found that the injuries were permanent and allowed damages upon that basis; if so, and this judgment is not disturbed, hereafter, at the suit of the appellee or someone else, the appellant may be compelled to make the wasteway in the present dam what it was in the old, and, under the restored condition, the waters will recede and remain at a level that will do no harm to the appellee. In that event, more than likely to happen if a jury in the present proceeding should find the appellant to be a trespasser, the appellee might have her property restored to her in its former condition, with damages for permanent injuries probably several times what she actually ought to receive. Upon the assumption that, if she was being injured by the defendant, the injury would not be permitted to continue permanently, the measure of damages should have been clearly laid down as being in addition to the value of trees or shrubbery actually destroyed, the cost of restoring her property to its condition before it was injured, unless such cost should equal or exceed its

value, in which event the value would be the measure of damages, to which cost of restoration should be added the actual loss sustained by being deprived of the full use of her property from the time the injury was committed up to the institution of the suit."

In Rabe v. Shoenberger Coal Co., 213 Pa. 252, where the injury was the destruction of springs in plaintiff's land by mining, and Williams v. Fulmer, 151 Pa. 405, where there was a diversion of the water of a stream, damages were given for the permanent injury because the injury was irreparable. The latter case had this element, that it was made optional with the plaintiff whether he would claim for the injury to the market value of his property, or the cost of removing the obstruction.

No good purpose would be served by a further discussion of the measure of damages in disputes where the parties neither had nor exercised the power of eminent domain.

The cases where the party causing the injury had the right to construct and maintain the injurious cause under its power of eminent domain, but did not secure compensation, are more analogous, and the measure of damages there applied should be more appropriate; (a) obstructions of a stream; Chestnut, etc., Co. v. Rutter, 4 S. & R. 6; Pbg., etc., Co. v. Gilleland, 56 Pa. 445; Woodward & Vincent v. Webb, 65 Pa. 254; Fredericks v. Penna. Canal Co., 148 Pa. 317; Riddle et al. v. Delaware County, 156 Pa. 643; Duffy v. York, etc., Co., 242 Pa. 146; Smeltzer v. Ford City Boro., 246 Pa. 560; Keats v. Gas Co., 29 Pa. Superior Ct. 480; Miller v. Buffalo, etc., Co., 29 Pa. Superior Ct. 515; Dutton v. Phila., etc., Co., 32 Pa. Superior Ct. 630; Engle v. Luzerne, etc., Co., 36 Pa. Superior Ct. 311; Metzgar v. Lycoming Twp., 39 Pa. Superior Ct. 602; Matteson v. New, etc., Co., 40 Pa. Superior Ct. 234; in none of these cases did the party having the right of eminent domain exercise the right eo nomine; (b) diversion of the stream to the injury of a

lower riparian owner: Pa. R. R. Co. v. Miller, 112 Pa. 34; Lord v. Meadville Water Co., 135 Pa. 122; Clark v. Pa. R. R. Co., 145 Pa. 438; Hogg v. Connellsville Water Co., 168 Pa. 456; Mott v. Consumer's, etc., Co., 188 Pa. 521; Standard, etc., Co. v. Butler, etc., Co., 5 Pa. Superior Ct. 563; Craig v. Boro. of Shippensburg, 7 Pa. Superior Ct. 526; Irving's Executors v. Media, 10 Pa. Superior Ct. 132, affirmed in 194 Pa. 648; Craig v. Boro. of Shippensburg, 11 Pa. Superior Ct. 490; these cases all hold that a recovery may be had in trespass for all injuries sustained, and some hold that successive actions can be maintained until the right of eminent domain is asserted; we then meet a line of cases, beginning with Miller v. Hanover, etc., Co., 240 Pa. 393, and Wagner v. Purity Water Co., 241 Pa. 328, continued in Rider v. York, etc., Co., 251 Pa. 18; 255 Pa. 196; to which may be added Fouss v. Tipton Water Co., 251 Pa. 68; in all of which the action was trespass, and the corporation had the power of eminent domain, but made no attempt to assert or exercise it before suit; the exclusive measure of damages in all but the last case was held to be the difference in market value of the land injured before and after the taking, that is, the diversion of the water to the injury of the lower riparian owner.

In Fouss v. Tipton Water Co., supra, POTTER, J., said (72) : "We are impressed with the thought that in a case such as this where the real estate is untouched and the interference is only with the water power, the proper measure of damages should be the value of the water power which is taken."

Plaintiff in this case asserts his right to damages for the permanent injury to his land, and also transient damages for injuries to gathered crops and other personal property stored on the land, resulting from floods caused by the negligent manner in which defendant's dam is constructed and maintained. This claim necessitates a wide examination of the authorities which necessarily cannot be confined to water cases.

In McClinton v. Pbg., etc., Co., 66 Pa. 404, AGNEW, J., said (409) : "The owner may waive his constitutional right to insist on ousting the trespasser, and proceed for compensation, which, upon being made, will divest his title and vest it in the company, leaving them liable only for the prior trespass.   This much is said in Borough of Harrisburg v. Crangle, 3 W. & S. 464, and there can be no objection to the doctrine, for it is still in the power of the company to proceed to appropriate the land for future use, notwithstanding the tortious character of the original entry, for which it is left to answer.   The owner's right to damages for the trespass is a vested right of which he cannot be deprived, but as to the use which is yet to come, the legal remedy for appropriation and compensation may be exercised by either party.   The petition, properly used, is not for the recovery of past damages under an unlawful entry, but for compensation for a right to be invested in the company.   Though the latter is often denominated damages its subject is essentially different from the former.   It is called damages only in the sense of an unliquidated demand, but in its nature it is the price of a purchased privilege.   On the contrary the claim for a tortious entry and illegal user of the land is purely and properly damages."

In McFadden v. Johnson, 72 Pa. 335, the case cited by ELKIN, J., as the basis of his idea on the measure of damages in the water cases, the principle in the McClinton case was reannounced and approved.

In Dimmick v. Brodhead, 75 Pa. 464, AGNEW, J., said (466) : "It has been settled......that it is trespass in a private corporation to take land for a public use without first making compensation, or giving adequate security therefor.   The constitutional provision is express that this must be done 'before such property shall be taken.' ......It had been held that it was not necessary that the compensation should be actually ascertained and paid before appropriation, it being sufficient if an adequate remedy was provided as a means of obtaining it without

unreasonable delay.   But the remedy is illusory in the case of a private corporation......It was different where the State herself exercised her own power......Her ability to compensate in the end is undoubted.   The entry in this case before the approval of the bond was a trespass, and as such the common law remedy is applicable."

The rule was qualified, in Justice v. Nesquehoning, etc., Co., 87 Pa. 28, to the extent that the railroad did not stand in the position of a mere trespasser in its rights in the structures placed upon the right-of-way for the purposes of its operation, as it had the right to continue and condemn the land.

In Selheimer v. Elder, 98 Pa. 154, it was held that the right to claim damage for a tortious entry was such an uncertain right that it could not be attached under an attachment execution, expressly distinguishing such a right from the right to damages in eminent domain proceedings.

In Gilmore v. Pbg., etc., Co., 104 Pa. 275, MERCUR, J., said (281) : "The whole work in constructing the road on the land of the plaintiffs was in the month of June, 1879.   Corn and potatoes were then growing on it.   They were probably planted in April or May.   Their destruction in making the road was claimed as an item of damage.   The evidence covered by the second assignment appears to have been admitted under the view that no damages should be allowed for this item, if the plaintiffs knew when planting them that stakes indicating location, had previously been set there, and the defendant was engaged in constructing the road on adjoining lands.   This is a misapprehension of the law, under the undoubted facts of the case.   Conceding that stakes had been set on the ground, either in 1868 or 1869, or not until 1871, or at each time, as it is shown two lines were run, the defendant thereby acquired no right to take possession and occupy the lands.   Actual payment of damages or security therefor duly approved must precede the taking.   The plaintiffs were under no legal obligation to refrain from

using their property by reason of any expectation that the defendant might afterwards take it. Although the compensation is usually called damages, yet it is in fact the consideration or price of a privilege purchased. Until the company made a permanent location, it was not liable for damages under the statute. When these crops were planted it had not made such location, nor had it given the required security......If the plaintiffs had refrained from using their lands for the eight or ten years which intervened between the running of the first line and the final location of the road, it was very clear they could not have recovered damages for that interval of time."

In Phila., etc., Co. v. Cooper, 105 Pa. 239, it was held that the landowner could maintain ejectment to recover lands from a railroad where compensation was not secured; an exception to this rule is treated in Oliver v. Pbg., etc., Co., 131 Pa. 408, where it was held that if the owner sits quiescent and allows large sums of money to be spent on improvements he cannot maintain ejectment for the lands where the entry and use are trespasses. This case was, however, decided on the theory of estoppel.

In Keil v. Chartiers, etc., Co., 131 Pa. 466, WILLIAMS, J., said (473) : "The appellant (a gas company) is a corporation clothed with the right of eminent domain......The entry having been made without payment of the damages, or the offer of security therefor, was unauthorized, and trespass will lie to recover for the breach of the close. The subsequent tender of a bond, and proceedings for the condemnation of the land, do not divest the right of action for the trespass, although they transfer the adjustment of the damages necessarily consequent upon the entry under the right of eminent domain from the common law action to the statutory proceeding. The right to sue, however, vested at the commission of the trespass ......and damages for the breach of the close, and for any deprivation of the use, or other injury sustained prior to the tender of the bond, are recoverable in this action.

But for the permanent injury by reason of the appropriation of part of Keil's lot, and the effect of such appropriation on the remainder, the damages are secured by the bond, and will be assessed in the proceeding instituted for the purpose and now pending."

In Graham v. Pbg., etc., Co., 145 Pa. 504, CLARK, J., said (513) : "For redress of the injuries resulting from this invasion [an entry without filing a bond] of the plaintiff's rights, he had, of course, his remedy by an action of trespass. The effect of the subsequent statutory proceeding to assess damages was to divest the title as of the date of filing the bond. In the action of trespass, if one had been brought, the plaintiff would have been entitled to recover damages for the tortious entry, and for any injuries he suffered from that date until the title of the right-of-way was vested in the company, not as these injuries affected the value of the land but the enjoyment of it; whereas, in the proceeding to assess damages under the statute, the measure of damages would be computed upon the value of the land, unaffected by the obstruction of the plaintiff's road, and its value as affected by it. The action of trespass is for the recovery of the damages accrued in the past, whilst the assessment under the statute is for the price of a permanent right or privilege to be enjoyed in the future; but that price must be settled upon a consideration of the value of the land at the time of its lawful appropriation, as it was or in the condition it was before the railroad was constructed, and its value afterwards. . . . . In estimating the injury done to the plaintiff in the taking of his land for right-of-way, the value of the land, unaffected by the construction of the railroad, is necessarily referable to some previous condition, for the railroad at the time of the filing of the bond, was in full operation : we must go back to the time of the original entry, to ascertain the condition of the land upon which the value is to be computed as of the date of the actual and lawful appropriation." The learned judge then proceeds to point out how the principles of laches,

estoppel and waiver influenced the court in adopting a different theory in Wheeling, etc., Co. v. Warrell, 122 Pa. 613; Allegheny, etc., Co. v. Colwell, 2 Mona. 300; and Oliver v. Pbg., etc., Co., 131 Pa. 408.

The rule of the divisibility of damages has been recognized in the latest cases in both the Supreme and Superior Court: see Shevalier v. P. T. Co., 22 Pa. Superior Ct. 506; Crider v. Pbg., etc., Co., 54 Pa. Superior Ct. 587; Speer v. Monongahela, etc., Co., 255 Pa. 211; Underwood v. Penna., etc., Co., 255 Pa. 553.

While the law is undoubted in regard to takings by railroads, under the power of eminent domain, there seems to be differences in the application of the principle to cases where water companies have entered upon land or water rights under the Act of 1874 and subsequent legislation.

In Lord v. Meadville Water Co., 135 Pa. 122, a case of the diversion of water, PAXSON, J., said (131) : "It was conceded upon the argument that the company had the right to divert it under its power of eminent domain. But it has never exercised such rights. To do so involves compensation to those who are or may be injured by such diversion. Compensation was not made nor security tendered......A taking without compensation is a trespass; as much so as the taking of land by a railroad company to construct its road without making compensation or filing a bond with security, as provided by law. Where the power to take exists, it must be exercised according to law. If it is not the corporation so taking becomes a trespasser." That this decision is still the law in this respect might well be inferred from the opinion of MOSCHZISKER, J., in Wadsworth v. Mfrs. Water Co., 256 Pa. 106, where it is said (111) : "Section 34 of the Act of April 29, 1874, P. L. 73, confers the right of eminent domain upon water companies and authorizes such corporations before they 'shall proceed to occupy the land to agree with the owner or owners thereof for the purchase of so much thereof as may be necessary but in case they cannot agree proceed-

ings [to condemn] shall be had.' Section 41 of the same
statute provides 'in all cases in which, under the provi-
sions of this act, any corporation is permitted to take
lands, and the said corporation cannot agree with the
owner or owners upon the compensation, the court of
common pleas of the proper county shall appoint five
freeholders and they shall estimate and determine the
value of said lands.' This act plainly contemplates that
in each instance, where a water company desires to ac-
quire property, for a reservoir or other public purpose,
the corporation must make an effort to agree with the
owner upon a purchase-price before resorting to con-
demnation proceedings. Therefore it follows as a matter
of course that, when in any given case this prerequisite is
observed, and negotiations are successfully carried
through to an accomplished purchase, in subsequent legal
proceedings to gain possession of other lands needed for
the same public improvement, all such prior purchases
must be considered and treated as though made in due
course of the exercise of the right of eminent domain, and
not as separate private transactions."

In Stauffer v. N. Stroudsburg Boro., 215 Pa. 143, a
per curiam affirmance, the court below, approving Gra-
ham v. Pbg., etc., R. Co., 145 Pa. 504, 514, held that in
a water company case the damages should be recoverable
as of the filing of security, but they should be measured
as of the difference in market value before and after the
original unlawful taking.

In Miller v. Hanover, etc., Co., 240 Pa. 393, the parties
asked for damages for a permanent injury and were al-
lowed to recover, although the water company sought to
limit the damages to the accrued trespass injuries. The
court refused to confine them to this standard. Speer v.
Monongahela, etc., Co., 255 Pa. 211, however holds that a
railroad can abandon a right-of-way located and appro-
priated at any time before the bond is filed or compensa-
tion made and be liable only for damages in trespass.

In Wagner v. Purity Water Co., 241 Pa. 328, ELKIN, J., said (334), citing the Miller case: "It is further contended that the learned court below erred in instructing the jury as to the proper measure of damages. The plaintiff was permitted to recover for special damages to his mill property without reference to the rule which makes the difference in value before and after the injury was committed the measure of his compensation. Clearly this was error if there was a permanent injury, and as we view the record this was not seriously disputed. In such cases the presumption of law is that such an appropriation as appellant made was a permanent one, and the burden was on the plaintiff to show the contrary: Carpenter v. Lancaster, 212 Pa. 581. As to the measure of damages the rule is the same whether the original entry or appropriation was lawful or unlawful: McFadden v. Johnson, 72 Pa. 336. In the very recent case of Miller v. Hanover & McSherrytown Water Company, 240 Pa. 393, it was held that the diverting of a stream without paying or securing compensation to a lower riparian owner is a trespass, and where the injury is permanent there may be a recovery on that basis and the depreciation in value of the land injured is the proper measure of damages. This is the last utterance of our court on the question and it rules the present case as to the proper measure of damages if the injury was of a permanent character."

In Rider v. York, etc., Co., 251 Pa. 18, ELKIN, J., said (20) : "The plaintiff sued in trespass to recover damages for the alleged unlawful diversion of the waters of a stream to the injury of the complaining riparian owner. ......The defendant company contended in the court below, and contends here, that the building of the dam in the stream was a permanent obstruction, and this having caused the injuries about which complaint is made, the measure of damages is the difference in market value of the lands before and after the injury. It is ably argued for appellee, and the argument is supported by numerous

authorities called to our attention, that one whose land is injured is not bound to assume that the obstruction complained of will be a permanent one, so as to require him to sue for damages upon the basis of a permanent injury; but that he has the right to regard the trespass as of a transient character, and instead of bringing one action for the whole injury to the value of his property resulting from the original obstruction he may sue for the amount of such injury as he suffers from its continuance. Where the facts warrant their application both positions are sound in principle and equally well supported by precedent and authority. But it does not follow that the damages in every case of this general character should be determined upon this basis. What rule should be applied depends very largely upon the facts of each particular case in which the question arises. In our own State more or less confusion has arisen in determining what rule should be applied as the proper measure of damages in actions of this kind. This court has taken occasion to review the authorities in several recent cases, and as a result it must be accepted as finally settled in this jurisdiction that where the injury to real estate is permanent, the measure of damages is the difference in market value before and after the injury, or the cost of removing the obstruction, whichever is the lower amount. This was the view expressed by our Brother POTTER in Rabe v. Shoenberger Coal Co., 213 Pa. 252, in which many of our cases are referred to and commented upon. The decision in that case simply followed what had been decided in many previous cases, and it stands as authority upon the question of the proper measure of damages where the injury to real estate is permanent. . . . . The same question was considered in Wagner v. Purity Water Co., 241 Pa. 328, in which it was held that the proper measure of damages where a water company appropriated the waters of a stream without exercising the power of eminent domain was the difference in market value of the land of a riparian owner before and after the appropriation. In

that case as in the present one the action was in trespass, but it was conceded that the Purity Water Company had the power of eminent domain, which is a disputed question in the case at bar. Appellant insists that the case just cited rules the present one upon the question of the proper measure of damages, while the appellee contends that it has no application because the injuries complained of here were not permanent. One expression in the Wagner case needs explanation. It was there stated that as to the measure of damages 'the rule is the same whether the original entry or appropriation was lawful or unlawful,' and McFadden v. Johnson, 72 Pa. 335, was cited to sustain this proposition......What we did intend to say in the Wagner case, and what we repeat now, is that a water company vested with the power of eminent domain, but having entered the land or appropriated the water without exercising the power as the statutes require is answerable in the same measure of damages to the landowner as if the original entry or appropriation had been lawfully made. This means that the proper measure of damages in such cases is the difference in the market value of the land affected before and after the injury.......If the jury should find that the injuries complained of were permanent in character, the measure of damages would be the difference in market value of the lands affected before and after the injury; on the other hand, if the jury should find that the injuries were of a transient character, appellee can recover special damages under the rule applicable to such cases. These suggestions only apply in the event it should be held that appellant is not invested with the right of eminent domain."

Any doubt remaining after this decision was set at rest by the subsequent case of Rider v. York, etc., Co., 255 Pa. 196, where the company, having been found to be possessed of the power of eminent domain, was held liable only for the injury to the market value of the property. WALLING, J., says, however, (199) : "The damage to plaintiff's premises resulted when the water was diverted

by the construction of the dam in 1908, and he was prima facie entitled to compensation for the delay: Hoffman v. Phila., 250 Pa. 1."

Before going further it becomes necessary to refer to two cases, decided since the Purity Water Case: Kraft v. Hanover, etc., Co., 242 Pa. 114, and Duffy v. York, etc., Co., 242 Pa. 146, where the defendant had the power of eminent domain; transitory damages were permitted and judgments therefor affirmed by the Supreme Court. The former was a case of diversion of the water to the injury of a lower riparian owner, and the latter was a case like the present one, where water was backed up on the upper riparian owner, and floods injured his property. Nothing appears in the report of either case to indicate the parties were not satisfied with the application of this measure of damages and they are not, therefore, in direct conflict with the Purity case.

The law is settled that where the injury to real estate is permanent, no matter whether the property has been lawfully appropriated or not by a water company having the power of eminent domain, the measure of damages is the difference in the market value of the land before and after the taking: Rider v. York., etc., Co., 251 Pa. 18. What, then, has become of the rights of a landowner to recover for the trespass before the lawful taking, the right of action for which all our cases recognize? The landowner is to get damages estimated as of the date of the original appropriation, and assessed as of the date of the giving of security, under Graham v. Pbg., etc., Co., 145 Pa. 504, and Stauffer v. E. Stroudsburg Boro., 215 Pa. 143; the privilege to use the rights taken, which is paid for by this measure of damages dates only from the giving of the security or payment of compensation, as provided for by the Act of 1874.

There remains the right to expect compensation in some form or other for the interference with the enjoyment of the property while the company's occupation remains a trespass. It is remarkable that this element of

damages should have existed so long, side by side, with the right to compensation in eminent domain without being merged therewith and formed into an item of the general damages recoverable in the statutory proceedings or the action of trespass which serves as a substitute therefor, where the primary taking is a trespass, which subsequently becomes a rightful exercise of the power of eminent domain. The landowner has, of course, the right to an instruction to the jury that he is entitled to damages for the delay in payment of compensation, provided he has not unreasonably refused the compensation offered. The gradual growth of this doctrine may be traced through the older cases where such damages were considered in arriving at the amount of compensation to which the injured landowner was entitled.

The cases in which this rule has been applied run the gamut of the various exercises of the right of eminent domain, by all sorts of corporations, and has been applied, with some distinctions in trespass cases, where there was no power of eminent domain, and where such power existed. This additional item of damages would fill in the gap, in the present case, between the entry or appropriation, and the time when defendant secured the compensation (which might be considered the date of the filing of this appeal, at which time, a bond was filed to cover appellee's judgment, and appellant water company took the position that its taking was in the exercise of its power of eminent domain).

A culmination of this doctrine may be found in the Act of June 1, 1915, P. L. 625, which provides that "in all cases where private property is taken, injured or destroyed by municipal corporations invested with the privilege of taking private property for public use, the damages caused by such taking, injury or destruction shall bear interest at the rate of six per centum per annum, and from the date of such taking, injury or destruction thereof." This act has recently been declared unconstitutional in Penna. Co. v. Phila., 262 Pa. 439, but

this does not affect the preëxisting right to this item of damages, as appears from the opinion in Whitcomb v. Phila., 264 Pa. 277.

This item has been allowed where a water company lawfully appropriated part of a stream to the injury of plaintiff's mill: Mengell's Executors v. Mohnsville, etc., Co., 224 Pa. 120; where a dam owner, without asserting its right of eminent domain, or securing compensation, obstructed a stream and caused floods to injure an upper riparian owner: Duffy v. York, etc., Co., 242 Pa. 146; where a water company, without asserting its right of eminent domain until trial, and without securing compensation, diverted water from a stream to the injury of a lower riparian owner: Rider v. York, etc., Co., 255 Pa. 196.

It will be noticed, that in the case at bar, the court below made no reference to this element of plaintiff's damages, confining them strictly to the injury to the market value of the land.

Another element in the case at bar, which lends uncertainty to the application of the measure of damages, is the fact that the injuries sustained are partly consequential, and partly an actual taking, not, however, assuming the proportion of an entire dispossession of the landowner, but which interferes with the enjoyment or use of his land. The percolation of the water through the subsoil, and destruction of its capacity for drainage is a direct taking, and the recurring danger of floods is an example of the ordinary nuisance.

The plaintiff claims the dam was illegally constructed and maintained, and this might well be, for the Act of June 25, 1913, Section 2, P. L. 555, provides that "from and after the passage of this act, it shall be unlawful for any......corporation......to construct any dam or other water obstruction; ......or in any manner to change or diminish the course, current, or cross section of any stream or body of water......without the consent or permit of the water supply commission of Pennsyl-

vania in writing, previously obtained, upon written application to said commission therefor." Defendant raised the breast of the dam in 1913, whether before or after June 25th, does not appear; neither does it appear that defendant obtained the permission of the water supply commission. The question of the illegality of the dam, and its negligent maintenance to the injury of the plaintiff, are questions of fact to be ascertained by a jury on a further trial.

We are, however, inclined to the view that Rider v. York, etc., Co., 251 Pa. 18, makes no distinction in the rule of damages in this class of cases, whether the cause of the injury is technically illegal or not, and the failure of the defendant to comply with the provisions of the water supply act would be a matter for the proper officers of the State to take up and correct.

Notwithstanding the cases heretofore considered, it does not seem to be either right or just to hold that defendant, under its power of eminent domain, can so maintain an obstruction in the water course that plaintiff will perpetually be subjected to unnecessary injury from floods, or that defendant could purchase such an easement, willy nilly. Such, however, will be the effect of applying the rule of the Purity and the Rider cases to the facts of this case. The measure of damages laid down in those cases is either inapplicable to the situation in this case, or the legislature should correct the apparent failure of the law to compensate persons whose property is injured.

In Ganster v. Metropolitan, etc., Co., 214 Pa. 628; Hartman v. Pbg., etc., Co., 11 Pa. Superior Ct. 438; 23 Pa. Superior Ct. 360, nuisances in the nature of vibration, and other subtle injuries to adjoining property, were compensated for as transient injuries, even though the acts compensated for were a lawful exercise of defendant's right to operate under its charter.

The paucity of cases on the question of compensation for consequential injuries, such as were compensated for

in the last considered cases, is due to the peculiarities of former Pennsylvania Constitutions. Where the agency causing the injury was endowed with the right of eminent domain, no liability existed for consequential injuries before the Constitution of 1874. Section 8, Article XVI, of the Constitution of 1874, gave a right to damages for consequential injuries arising from the exercise of the power of eminent domain: see Jackman v. Rosenbaum Co., 263 Pa. 158, 168. It thus appears that the giving of damages for consequential injuries caused by the exercise of the right of eminent domain is comparatively new in our law.

In Pbg., etc., Co. v. Gilleland, 56 Pa. 445, it was held that a railroad had no power of eminent domain to erect a causeway and culvert over a stream in such a way as to be inadequate to vent the ordinary flood waters of a stream; that the damages arising from the failure to build a sufficient culvert was no part of the damages to be estimated by the jury of view, but were recoverable as for a tort whenever they accrued.

In Fredericks v. Penna., etc., Co., 148 Pa. 317, an upper riparian owner was allowed to recover for damages to his crops, in separate years, resulting from a permanent obstruction of a stream.

In Riddle v. Delaware County, 156 Pa. 643, the injured landowner elected to ask damages for the permanent injury to his property arising from floods; the Supreme Court sustained a judgment based on that measure.

In Duffy v. York, etc., Co., 242 Pa. 146, the injured upper riparian owner sued in trespass for transient injuries arising from ordinary floods being cast upon his land, and judgment for transient damages was affirmed by the Supreme Court.

In Miller v. Buffalo, etc., Co., 29 Pa. Superior Ct. 515, a railroad constructed a bridge in such a fashion that it caused ice jams and flooded plaintiff's land; although he had already recovered damages in eminent domain, he was allowed to recover transient damages.

In Keats v. Gas Co., 29 Pa. Superior Ct. 480, and Engle v. Luzerne, etc., Co., 36 Pa. Superior Ct. 311, the obstruction was a gas pipe, run across a stream in such a way as to gather debris and dam up the waters at times of flood; the injured upper riparian owner was allowed to recover transient damages. In Metzgar v. Lycoming Twp., 39 Pa. Superior Ct. 602, a judgment for transient damages for the failure of a township to provide a sufficient culvert for the carrying off of the water of a living stream in times of ordinary flood, was affirmed. The element of negligent construction and maintenance existed in these cases as it does in the case at bar.

No corporation has the right to negligently exercise its power of eminent domain so as to cause unnecessary injury to an owner. In the case at bar, the jury might have inferred, from the evidence, that defendant's dam had no floodgates, flushways, or spillways, adequate to dispose of the ordinary floods, and that this negligence unnecessarily injured personal property of plaintiff stored and standing on the land; that defendant made a negligent use of its power of eminent domain and, therefore was liable for the consequences in damages for all injuries to crops, fences, and gathered crops, stored on the land; this independent of the damages for the permanent injury in rightfully or wrongfully raising the level of the water in the dam, causing the water to percolate through the subsoil, stop the drainage, interfere with the use and thus reduce the value of the land.

The plaintiff has, therefore, two causes of action, declared on in two counts: (1) for the injury to the drainage, percolation of water in the subsoil, and the reduction of the productivity of the land, a permanent injury, for which he is entitled to damages assessed according to the measure laid down in the Rider cases; and (2) for the negligent maintenance of the dam, without adequate provision for ordinary floods which destroyed growing crops, gathered crops and fences, for which transitory

damages were given in Duffy v. York, etc., Co., 242 Pa. 146.

The first injury arises from an exercise of the power of eminent domain, which, while a trespass, nevertheless has the same effect as a rightful exercise in that the measure of damages is the same; the second arises from an improper use made of the obstruction, which defendant had a right to maintain, but not in the form in which it was maintained. It could not purchase, under its power of eminent domain the right to negligently maintain its dam, and such negligent maintenance was a separate and distinct trespass, for which additional damages of a transient nature may be recovered. To these two elements of damages, should be added, damages for delay in payment. If plaintiff chooses to accept such damages, he forfeits his right, if any exists after the Purity Water case, to bring an action for the interference with his property under the doctrine of Graham v. Pbg., etc., Co., 145 Pa. 504, 513. It will be noted that this doctrine was in all the cases up to the last named case, and then apparently fell into disuse, being only referred to in subsequent cases, although always recognized as an existing rule. About the same time, the doctrine of damages for delay began to appear more frequently, until, in 1915, it received legislative sanction. The strongest application of this rule appears in Wayne v. Pa. R. R. Co., 231 Pa. 512, a perfect case for the application of the doctrine of the Graham case. It follows that damages for delay, have taken the place of damages for the temporary trespass, in ascertaining this uncertain element of the injury.

The plaintiff in the case at bar has a right to damages for the permanent injury to the drainage and productivity of his land; Rider v. York, etc., Co., 255 Pa. 196; to transient damages from the floods negligently cast upon his land to the injury of his crops, gathered and ungathered, and personal property, together with damages for delay: Duffy v. York., etc., Co., 242 Pa. 146. This conclusion makes it necessary to grant a new trial at the

request of the plaintiff below, that he may have the jury find the amount of his transitory damages.

The remaining question affects the right of the defend-ant to a new trial. To what period does plaintiff's right to damages extend, to the date of his purchase of the land in 1912, or to the building of the dam in the early nine-ties?

In Wagner v. Purity Water Co., 241 Pa. 328, ELKIN, J., said (333) : "It is further urged that the appropriation of the water of the stream about which complaint is here made was of a permanent nature; this permanent taking occurred before plaintiff acquired title to the mill prop-erty which it is alleged was injured by diverting the water from its natural channels; and that any damages resulting therefrom were a personal claim of the owner when the injury occurred and do not run with the land nor pass by deed unless it is expressly so provided. This argument has much force and it must be conceded that it is difficult to reconcile our own cases in which different phases of this question have been considered. If there had been a lawful appropriation in the first instance this rule would certainly apply and all of our cases so held. It is likewise true that the rule has been held to apply in many cases in which the original taking was unlawful but permanent and continuous. But these cases depend-ed upon their peculiar facts and it cannot be fairly said that any rule of general application is deducible from them. In such cases much depends upon the nature of the property taken, the character of the use made of it, the acquiescence or understanding of the parties at the time of the appropriation, and the knowledge or intention of the landowner when the injury occurred. There is no doubt, even in those cases in which the original taking was unlawful, that the landowner may recover damages on the basis of a permanent injury, and when he has so recovered no subsequent claim for damages can be as-serted by himself or his successors in title. As applied to the case at bar, the safer and sounder rule would seem to

be that until there has been an original lawful taking, or until damages have been recovered on the basis of a permanent unlawful taking, the diversion of the water may be treated as a continuing trespass for which damages may be recovered in an action of law. Under the facts here presented the original appropriation must be regarded as an unlawful taking and since no damages permanent or otherwise have been recovered, we think appellee has standing to assert a claim for the same in an action of trespass. If this be true it necessarily follows that he can claim for permanent injuries and if he recover on this basis he and his successors in title will be concluded from asserting any further claims for damages." It will be noticed that he applied his ruling to the diversion of water only, and to the facts of the particular case.

In Underwood v. Penna., etc., Co., 255 Pa. 553, a railroad entered upon land, made a location, and the directors appropriated the land by resolution in 1902; nothing further was done until October, 1911, when the company filed a bond to secure compensation; in the meanwhile, in February, 1911, the land had been conveyed to plaintiff, who claimed damages as for a permanent injury. The court below held that the right to damages was a vested right in the landowner at the time of the appropriation and did not pass to the plaintiff unless expressly provided for in the deed. The Supreme Court reversed the judgment because the landowner's title to the right-of-way was not divested until compensation was secured, which occurred in October, 1911, after plaintiff acquired title, and the permanent injury did not occur until the title was divested. The opinion was carefully worded to preserve the right in the landowner at the time of the location, to damages accruing before he conveyed his title to the plaintiff, citing Mountz v. Phila., etc., Co., 203 Pa. 128, and it does not appear whether damages for delay in payment were given. Frazer, J., says (559) : "If we hold the right to damages is absolutely fixed at the time of the

adoption of the location, and being a personal right, would not pass with a transfer of the land, we have the anomolous situation of the vendee losing the land taken without notice and without compensation in violation of the constitutional inhibition and the vendor recovering the price of the portion of the land subsequently taken, which he sold to the vendee and for which he had already received full price from the purchaser. Furthermore, the measure of damages is not the value of the land actually taken, but the amount of depreciation caused to the whole tract. The vendor would, therefore, claim to recover not only the value of the land taken but also the damage caused to the tract owned by the vendee as a whole. Apart from the inhibition of the Constitution, such a result demonstrates the fallacy of the judgment of the court below. We, therefore, conclude the only consistent rule is to hold that a claim for damages for taking land, in so far as the right thereto between the grantor and grantee is concerned, arises when the damages are secured and therefore accrues to the person who owns the land at the time such security is entered."

How this ruling is to apply to the element of damages for delay, or damages for the tortious entry, for which damages for delay is a substitute has yet to be determined. Are damages for delay in such cases to relate to the original appropriation, or to the date of plaintiff's acquisition of title, or to the date of the securing of compensation? In Wayne v. Pa. R. R. Co., 231 Pa. 512, it was held that such damages dated to the original location, but there the plaintiff was the owner at the time of the location and continued so up to the time of trial.

In cases like the present the injury from an unlawful entry is, in its inception, a trespass to the land as of the date of the entry, and continues such until compensation is secured or damages paid: McFadden v. Johnson, 72 Pa. 335. AGNEW, J., said (336) : "The damages for the injury done to the land while Mrs. McFadden was the

owner, were clearly a personal claim, which did not run with the land. If the company entered unlawfully, the entry and work done upon the land were a trespass, and the right to recover damages could be enforced by a common law action. If the entry was lawful, the company acquired a right, for which the damages (so called) are a compensation, enforceable in the statutory mode given to assess it......In either case......the right is personal, belonging to the owner of the land when the entry and injury took place, and could pass only by her assignment."

In the case at bar, therefore, whatever injury accrued to the land before plaintiff acquired title belonged to the owner of the land at that time, and would be recoverable in an action of trespass, if the statute of limitations does not intervene. If damages for delay in payment are a substitute for such damages, the landowner at the time of the entry is entitled to all damages for delay prior to 1912, when Sebree acquired the land. The owner at the time of the entry could have maintained trespass, ejectment, a bill in equity to abate, or could have demanded the filing of a bond if the dam was originally built in the exercise of the power of eminent domain, and the right in any of these actions would have been personal. Sebree did not purchase them and should not be allowed to exercise them for his own benefit. The right to maintain a dam, as against Sebree's predecessor in title, at a certain height, must be conceded, subject to a right to damages for the trespass. For actual injuries occurring before Sebree took title, plaintiff had no right of action, and, we think, does not wish to assert such right. He was not, therefore, entitled to the difference in the market value of the land as though there was no dam in existence at the time he purchased; he was entitled only to damages for the permanent injury to his land resulting from the construction and maintenance of the dam at the height to which it was raised in 1913; yet his testimony refers to a difference in market value with a dam and without

a dam. He testified as follows: "Q. What is the market value of this land, assuming there was no dam there as of to-day? A. As if there was no dam there? Q. Yes, the market value? A. $5,000. Q. What is the market value of that land with the dam erected as it is, and backing the water on it so affecting the drainage, as affected by the dam? A. $2,000." Sebree's is the only testimony upon which the jury could find any permanent injury to the market value of the land; it was based upon the supposition that Sebree has a right to the enjoyment of his land without it being affected by a dam of any kind, yet a dam had been maintained for more than twenty-one years, and Sebree only objected to the raising of the breast of the dam. The court submitted the question to the jury in the following language: "The main and vital question here is: Did the dam cause the injury?" It further appears that in submitting the question to the jury the court allowed them to consider not only testimony of the injury to the drainage, but also testimony in regard to periodical floods, extending back to the first construction of the dam, caused by the dam, in estimating whether Sebree's interest in the land had been injuriously affected.

As we have already said the injuries arising from floods are transient in their nature, and belong to the owner of the land at the time of any particular injury, yet the court permitted the jury to consider them as elements affecting the market value of Sebree's interest. We cannot ascertain from the testimony and the charge, how much the jury based its verdict for permanent injuries on the fact that plaintiff's crops had been injured and personal property destroyed; yet testimony relating to such damages was in the case and submitted to the jury as elements of the permanent injury to the land, not as specific items but as affecting the market value before and after the appropriation. These elements of plaintiff's damages are transient, and form no part of the permanent injury to the land: Pbg., etc., Co. v. Gilleland, 56 Pa. 445.

This state of the case leaves us in grave doubt whether the jury considered the $400 worth of vegetables being destroyed as one of the evidences of injury to the market value of the land. If the jury did consider this item, the judgment for permanent injuries is incorrect, and there is no way of ascertaining the fact.

The case was tried under a misconception of the law on the subject as applied to the particular facts and pleadings, and to obtain substantial justice between the parties, and remove uncertainties, the judgment of the court below in favor of the plaintiff below, must be reversed and the record remitted for a new trial.

The judgment of the court below is reversed and a venire facias de novo awarded in both appeals.